## KINDLE v. ARMSTRONG PACKING CO.

### No. 5076.

Court of Civil Appeals of Texas.
Texarkana.

March 4, 1937.

Andrew Priest, Jack C. Burroughs, and Leslie Thomas, all of Dallas, for plaintiff in error.

Bibb & Bibb, of Marshall, for defendant in error.

WILLIAMS, Justice.

This is an action for damages for personal injuries growing out of a collision of two automobiles upon a highway in Smith county, tried to a jury, which resulted in judgment being rendered for defendant.

Plaintiff, Kindle, was riding in a Chevrolet coach with one Bullard who was driving this automobile, while one Edwards, an agent and employee of defendant, was operating a Plymouth coupé in the opposite direction, or to the north, when the two collided.

Plaintiff's pleadings alleged specifically the various acts of defendant relied upon as negligence. Defendant's pleadings consisted of a general demurrer, general denial, and pleaded specific acts of omissions and commissions on the part of plaintiff Kindle which caused or contributed to cause his injuries.

The jury found that defendant, Edwards, failed to keep a proper lookout, that this was negligence, and to special issue No. 4 the jury answered this was not a proximate cause of the injury; that Edwards was driving at an excessive and dangerous rate of speed, but this was not negligence; that Edwards was not driving on his left-hand side of the road.

On the issues of contributory negligence pleaded, the jury found that the car plaintiff was riding in was being operated on its left-hand side of the road; that plaintiff with knowledge of its being operated on the left-hand side failed to direct and

request the driver not to so operate the car, but that such failure to direct and request was not contributory negligence; that the driver of the car plaintiff was riding in failed to keep a proper lookout, but that plaintiff was not guilty of contributory negligence in remaining in said car with knowledge that the driver was not keeping a proper lookout.

On other acts of negligence alleged Edwards was acquitted, and plaintiff was absolved of contributory negligence on other specific acts alleged.

From the foregoing, it can be seen that no alleged act of negligence of defendant, Edwards, was found as the proximate cause of the injuries; and further that no alleged act of plaintiff, Kindle, was a contributing cause.

There were no pleadings which alleged that any of the acts of Bullard was negligence, nor a proximate or sole proximate cause of the injuries and none were submitted to the jury. The jury answered that it was not an unavoidable accident. They were instructed that "an unavoidable accident" is an occurrence which is not caused or contributed to by any negligence on the part of Edwards or any negligence on the part of plaintiff, Kindle, or Bullard, which caused or contributed to cause the occurrence.

■ It is asserted by appellant that the jury's answer that the negligence of Edwards in not keeping a proper lookout was not a proximate cause of the injury is against the overwhelming weight of the evidence, and that this negative finding is irreconcilable and contradictory in that the jury found that plaintiff, Kindle, was not guilty of contributory negligence, and that the collision was not an unavoidable accident. It is asserted, therefore, the court may assume the existence of proximate cause as a matter of law because the defendant was found guilty of negligence and, as plaintiff was acquitted of contributory negligence, the negligence of defendant was the cause of the injury. In this contention, the acts and conduct of the driver Bullard is blotted out of the picture, and whether any of his acts was the sole or a proximate cause of the collision was wholly ignored in the trial of this case. Under the pleadings in this case, it was incumbent upon plaintiff to make his case. The jury in this instant case found that Bullard failed to keep a lookout and that he operated his car upon the wrong side of the road. That his car being operated upon the wrong side of the road may have been in the minds of the jury a proximate cause of the collision. There is no conflict here.

■ As said by Judge Hickman in Jones v. Gibson (Tex.Civ.App.) 18 S.W. (2d) 744, 746:

"Nothing is better settled than that the question of whether an act of negligence was the proximate cause of an injury is a fact issue. * * * That question being a fact issue, then the general rule with reference to fact issues must be applied, and in order to justify the court in holding, as a matter of law, that a fact issue had been established to such an extent that same should not have been submitted to the jury, the evidence must be such as that ordinary minds could not differ with respect thereto. * * *

"To our minds, a holding that, since the jury found the defendant negligent and the plaintiff not negligent, and since there is absent from the record evidence that the injuries were inflicted by some other agency or cause, the question of proximate cause was thereby eliminated, is to practically do away with the well-established doctrine of proximate cause."

See Owings v. Commerce Farm Credit Co. (Tex.Civ.App.) 29 S.W.(2d) 871, for discussion of same issue raised here. 30 Tex.Jur. § 62, p. 723; Hutton v. Burkett (Tex.Civ.App.) 18 S.W.(2d) 740.

■ In McCoy v. Beach-Wittman Co. (Tex.Civ.App.) 22 S.W.(2d) 714, 716, strongly relied upon by appellant, the jury found the negligence of the defendant and the driver of the other car in which plaintiff was riding were both a proximate cause of the injury. And with such facts, for one to escape liability it was incumbent upon him to show that the negligence of the other was the sole proximate cause of the injury. This situation was what Judge Jackson had in mind when he stated in that opinion: "It being uncontroverted that the collision was the proximate cause of the injury, in order for appellee Charles O. Mitchell to defeat appellant's right of recovery against him, it was incumbent for the testimony to show that the negligence of the driver of the car in which appellant was riding was the sole proximate cause of the injury; because, where two acts of negligence or two efficient causes contribute to an injury, and without the operation of

each cause or each act of negligence the injury would not have occurred, each act of negligence or each efficient cause is a proximate cause."

That the jury's finding that defendant's failure to keep a proper lookout was not a proximate cause of the injuries is against the overwhelming weight of the evidence is amply answered by the jury when they found that Bullard was on the wrong side of the road and drove the car at such rate of speed and in such manner as to endanger the life and limb of himself and other persons on the highway at the time of the collision.

■ The testimony supports the findings that Bullard's car was on the wrong side of the road. Witness Dozier testified: "There were tracks all around between the Chevrolet and the embankment on the east side of the road. Those tracks were on the east side of the road. I saw no tracks or scraped places on the west side of the road."

The witness Bliss, one of the first to the scene of the collision, testified: "There was plenty of glass and wreckage there east of the center of the road. I saw a scrape or track there at the point of the accident where they pushed in the road after the impact. Those marks were just to the east of the center of the road fronting the front wheels of the Plymouth. None of the injured parties had been removed from the cars when I arrived. I noticed no marks on the west half of the road."

Other witnesses testified to similar physical facts. This was sufficient for a jury issue and will not justify this court to disturb their findings.

■ In the other remaining assignment of error, appellant claims that the jury did not follow the court's charge, with reference to the definition of proximate cause as applied to special issue No. 4, but considered the advice and definition as given by the juror Smith, and in his proposition asserts that such constitutes material misconduct.

On motion for new trial four of the jurors testified as to the deliberations and it is necessary to set out pertinent parts of their testimony for a clear discussion of this assignment of error.

Shank, foreman, testified: "I was one of the nine who wanted to answer question No. 4 'Yes.' The juror Smith made a considerable argument on 'proximate cause', in which he claimed that it meant the whole cause; that he had served on juries, had been around the courthouse and had come in contact with that word, or its meaning. I thought I knew what that meant; I thought it meant the nearest to the whole cause. I think the jury was on that particular question probably three hours. As a result of Smith's discussion with me that proximate cause was the whole cause, I changed my vote on that issue. After deliberating and discussing it back and forth we finally agreed on Mr. Smith's version of the court's charge. The only thing that discussion had to do with was what was meant by the court's definition of proximate cause; that is, the question of whether we understood or misunderstood the court's charge. I did my dead level best to answer those questions under the evidence and the law as the court gave it to me. That was my object and that is what I did as near as I could."

Juror Bickendike's testimony was substantially the same as the foregoing. He testified that he was one of ten who wanted to answer question No. 4, "Yes." "I changed my vote on that issue because we didn't feel like it was the sole cause. We gave the matter our full time in considering each and every question and read the court's charge in connection with those questions, and I did my dead level best to answer those questions under the evidence and under the charge of the court and I answered them that way as far as I knew." The other two jurors testified that the jury was out forty-eight hours; that they discussed what the court meant in his charge on proximate cause back and forth for four or five hours and then voted "No" on this question.

Prior to the enactment of article 2234, Vernon's Ann.Civ.St., a juror could not be heard by affidavit or testimony to impeach his verdict. The evident purpose of this statute was to permit jurors to testify with reference to some overt act of misconduct on the part of some member of the jury or a third person, and of such a nature as might be reasonably calculated to improperly influence some member of the jury in reaching a verdict.

Are the remarks of the juror Smith and the discussion and deliberations of the jury as described herein "an overt act of misconduct on the part of the jury"

as contemplated by this statute, and, secondly, would same be reasonably calculated to influence some member of the jury? If we could listen in on the deliberations of most of the juries passing upon a series of questions—some almost a set of depositions—we would probably hear various interpretations and applications of the definitions, pro and con, in an effort to reach a decision. Should it be a policy of the law to bring the jurors back, put them on trial, and ascertain their reasoning or argument as to their conclusion on the definitions written in the English language in the charge? Would each improper argument by a juror who influenced another one to vote with him be considered an overt act of misconduct? When trained legal minds and the courts differ in the interpretation of the law, what is to be expected from the laymen impaneled upon a jury? If such argument or deliberations honestly made but improper is to be considered an overt act of misconduct of the jury within article 2234, then when would the verdict of a jury be certain and of any value?

Justice Leddy in Bradley v. Texas & Pacific Ry. Co. (Tex.Com.App.) 1 S.W. (2d) 861, 863, states clearly our view of this proposition as follows: "We are unable to bring ourselves to the view that it was contemplated by this enactment to permit jurors, after their verdict had been returned, to be subjected to an inquisition in order that it might be ascertained whether they disobeyed or misunderstood the charge of the court or misunderstood or misapplied the facts in evidence. To sanction such a construction of the statute would render verdicts of juries uncertain and of little value, and the granting of new trials, instead of being the exception, would become the rule. The court would be compelled to set any verdict aside when one juror could be procured who would testify that he did not obey the charge of the court or did not properly apply the law to the facts, as such testimony would be impossible of contradiction. A juror so testifying would not be subject to the pains and penalties of perjury. * * * We can hardly imagine a more dangerous procedure than that which such practice would sanction. If such were the rule, verdicts of juries would indeed rest upon a most precarious basis."

Also, see, Ellerd v. Ferguson (Tex.Civ. App.) 218 S.W. 605; Crosby v. Stevens (Tex.Civ.App.) 184 S.W. 705, 712; Gulf, C. & S. F. Ry. Co. v. Moser (Tex.Civ. App.) 277 S.W. 722; Farrand v. Houston & T. C. Ry. Co. (Tex.Civ.App.) 205 S. W. 845; Phillips v. Texas & P. Ry. Co. (Tex.Civ.App.) 281 S.W. 1104; Ross v. West Texas Utilities Co. (Tex.Civ. App.) 281 S.W. 641. If Stehling v. Johnston (Tex.Civ.App.) 32 S.W.(2d) 696, is in conflict, we decline to follow same.

The learned and experienced trial judge heard this testimony; overruled motion for new trial; and we see no reasons to disturb his conclusions.

The judgment of the trial court is affirmed.