## MADDOX v. TEXAS INDEMNITY INS. CO.

### No. 14095.

Court of Civil Appeals of Texas. Dallas.

Oct. 7, 1949.

Rehearing Denied Nov. 4, 1949.

White & Yarborough, Dallas, for appellant.

Carrington, Gowan, Johnson & Walker, Dallas, for appellee.

YOUNG, Justice.

Basis of suit is claim of total and permanent disability under Workmen's Compensation Act, Vernon's Ann.Civ.St. art. 8306 et seq. Of fourteen issues submitted to the jury, only three were answered. Issue 1 inquired as to whether plaintiff sustained personal injuries on or about July 25, 1947, to which the jury answered "No"; and, under the charge, no further consideration of issues was required. However, the jury answered "No," to issue 13 of whether compensation should be paid in a lump sum, and further in answer to issue 14, found that plaintiff told his superior, Mrs. Hillard, that he had hurt himself on or about above date.

The six points relied on for reversal complain, in substance, that (1) certain statements of the jurors while considering issue 1 constituted overt acts on their part and misconduct necessitating a reversal; and (2) the court's error in permitting defense counsel on cross-examination of plaintiff to interrogate him as to his drinking on the job and in allowing Mrs. Hillard to so testify.

Plaintiff's alleged disability occurred while working for Southern Ice Company. His back injury (ruptured disc), he stated, was suffered in connection with handling a heavy block of ice in the company vault, which injury he had reported to Mrs. Hillard at the time. However, he worked the balance of that day and continued to perform regular duties of employment without interruption, until September 1, when he was discharged. As to whether plaintiff received an injury depended solely upon his own testimony so far as direct evidence was concerned, he testifying fully with respect to fact of injury and its aftereffect on other bodily functions. He stated that his wife would rub the area of injury with alcohol nearly every night, but she did not appear at the trial. As bearing upon appellant's charge of jury misconduct, we might add this further development of testimony: Having directly testified to working for Texas Prefabricated Housing Company following the accident, Maddox denied on cross-examination that he had made any written application therefor or filled out any kind of questionnaire in such connection. He was later called to the stand and admitted his signature to defendant's exhibit 1, which was a photostatic copy of application for employment to the Prefabri-

cating company; admitting further that the answer to one of the questions therein was that applicant had no back injury.

On motion for new trial the court heard testimony of five jurors and made findings, viz.: "The court finds that before special issue No. 1 the court's main charge was answered and while the jury was discussing said special issue that several of the jurors made the statement in the jury room in the hearing of all the jurors that the plaintiff should have produced some witness to testify to his honesty, integrity and veracity. The court further finds that while the jury was engaged in its deliberation of this case and before it had answered special issue No. 1 that the statement was made in the jury room by several jurors that the plaintiff should have on the trial of the case produced some witness to testify that he complained of trouble in his back after the alleged date of his injury"; then concluding as a matter of law that "the statements made by the jurors hereinabove set out are not misconduct."

The testimony relative to plaintiff's "drinking on the job" was consequent upon the following cross-examination of plaintiff by defense counsel:

"Q. How did you happen to be discharged there on September first? A. Well, I went on. That was pay day and I went there that morning and got my check and went over to 13 to visit Mrs. Rosa and I drank a couple of bottles of beer and I ate dinner at this covered wagon. When I went there that evening, Crawford told me, he said, 'You can go to the office. Spearman will work in your place this evening.'

"Q. Did he say why to go to the office? A. He didn't say.

"Q. Did you go to the office? A. No, sir.

"Q. Why didn't you go to the office? A. I went home.

"Q. I say, why didn't you go to the office? A. Well, I thought he done smelled that beer on me, he would fire me anyhow, so I figured I was fired anyhow.

"Q. So you just didn't give him an opportunity to tell you so, you just figured you were fired anyway? A. That's right.

"Q. And didn't go? A. That's right."

Later while on the stand at instance of defendant, Mr. Gowan further inquired of Maddox as to whether he had been drinking whisky there at station 13 on September 1 in presence of Mrs. Hillard, to which witness answered "No, sir"; and Mrs. Hillard, being asked by defendant about seeing plaintiff drinking intoxicants on same day, answered: "Well, I don't remember him drinking right on that date, but I remember he come out there kinda, his face was flushed and I don't know—whether it was about that date or not."

It is to the latter course of questioning that appellant objects and comprehended in points 3 to 6, inclusive, on grounds of no pleadings in support, of no claim that the drinking inquired about had anything to do with his disability; being collateral to any issue and an attempt to prejudice appellant with the jury as to his drinking habits. Error was also charged in the court's refusal to instruct the jury that whether plaintiff drank or did not drink would not affect his claim.

The points just outlined will be first discussed. We can conceive of no possible error in the interrogation complained of because plaintiff himself voluntarily interjected the sum of all testimony on the subject in response to the proper and legitimate inquiry of the reason for his discharge on September 1, whether on account of physical disability following injury or from some other cause. The further questions by counsel to plaintiff and Mrs. Hillard produced evidence along a line wholly negative in character, and error, if any, in pursuing such inquiry is viewed as harmless.

We further agree with the trial court's finding of no misconduct on part of the jury in their deliberations, bearing in mind the provisions of Rule 327, Texas Rules of Civil Procedure, that same arises only in case of "any communication made" or "other testimony" received by them. We must view these jury discussions in their actual setting which was this: The debate involving a proper answer to issue 1 (whether claimant sustained injury or not) extended into the next afternoon, some of

the panel taking a negative position from the start. All evidence on fact of injury was from plaintiff alone whose testimony, on another aspect (denying that he had made written application for the prefabricating job), was shown on examination by defendant to be, at least, self-contradictory. In turn, all dissertations of jurors relied on by plaintiff as misconduct are seen to center on plaintiff's testimony as a whole and their dissatisfaction with it upon application thereto of the court's definition of "preponderance.". Such was the manifest trend of jury testimony on motion for new trial, as evidenced by extracts therefrom, viz.:

(Juror Duncan): " * * * Did you hear anybody make any statement to the effect that he ought to have had somebody to vouch for his veracity? A. Yes, sir, we *all* mentioned that, that it looked like a man that was fifty-four years old, that there could be some one that could come in and say something in favor of his word." (Emphasis ours.)

" * * * Q. Now, the gist of the discussion in there was this, wasn't it, Mr. Duncan: that you all hesitated to take the man's mere statement alone that he had received injury as proof of the fact that he had received it, or adequate proof? A.. Well, we didn't know whether to figure that as preponderance of the evidence or not.

"Q. That is why you asked the other question that you did later?[1] A: Yes, that is what stopped us on No. 1 issue.

"Q. In order words, you just felt like, or rather you all expressed the thought in there, did you not, as brought out by Mr. Johnson, well, if he had really sustained an injury and had had his wife rub his back and things like that—A. Yes, sir.

"Q.—that he ought to have brought some witness in there, such as his wife, to testify? A. Just wasn't enough evidence.

(Mr. Heroy): "Q. All right, Now, while that issue was being discussed, what was said that you heard in there with reference to this: that he should have had somebody—somebody made the statement or it was stated that he should have had some other witness to testify to his honesty and integrity? A. Yes. The question hung on whether the preponderance of the evidence at that time was entirely his word.

"Q. That is right. A. And the testimony had already shown that he would commit an untruth, and there was no testimony to show that in most things he would be truthful; so we did discuss the point as to why there wasn't anyone there as a character witness for the man to substantiate his—

"Q. Truthfulness? A. —his truthfulness. * * *

(Cross-examination): "Q. Just one question, Mr. Heroy. In other words, do I understand that you gentlemen in the jury discussed the question of whether or not you could believe this plaintiff in this case? A. Yes, that's right.

"Q. And in your discussion, you stated and concluded that in the absence of some other supporting testimony to corroborate him, you didn't feel that you could believe him? A. That's right.

(Mr. Estes): "Q. And you discussed the fact, as I understand, that it does look like if he had really sustained an injury like that, he would have had some one here to produce some additional evidence to support him, isn't that right? A. Yes, sir.

"Q. And in the absence of any supporting evidence or anything like that, you just didn't believe that he was telling the truth when he said he got hurt in that way on that date, isn't that right? A. No, I wouldn't say I didn't believe he was telling the truth. I would say the judge's charge to the jury

---

1. During jury sessions their foreman sent out to the court the following note: "The jury respectfully request that you answer the following question in order that a unanimous decision may be given on Special Issue No. 1: Question. May a mere statement of a party in a suit made on the witness stand, unsupported by other proof, be held in any instance to constitute preponderance of evidence as defined in the instructions to the jury in this case?" The judge sent back this answer: "The answer to your question is 'Yes,' and in this connection, you are referred to the definition of preponderance of the evidence and to the first paragraph of the last page of the court's charge."

was in such a way to find from a preponderance of the evidence.

"Q. Yes, from a preponderance of the evidence, and you didn't believe that the evidence prepondered to the effect that he sustained the injury, is that it? A. Yes.

(Mr. Wilson): "Q. What was said about his failure to have a witness there to vouch for his truthfulness, his working record, and things of that sort? A. It has been so long ago, I don't remember the particular discussion on it. We were debating—

"Q. There was a discussion on that, wasn't there? A. As to he should have had more witnesses down there?

"Q. Yes. Wasn't that the very point that brought forth this note from the jury? A. I don't remember it was brought out he should have had. We just wondered if there was enough evidence in the case to warrant a decision."

■■ We do not think that above jury statements can be classified as "overt acts"; in other words, as an injection into their deliberations of extraneous facts and circumstances not disclosed by the evidence. Illogical and erroneous as these statements may appear, they were merely expressive of the jury's process of reasoning in passing upon the credibility of testimony (appellant's). Of course, any charge of misconduct must turn on its own circumstances; but the following observation of Judge Taylor in Akers v. Epperson, 141 Tex. 189, 171 S.W.2d 483, 486, 156 A.L.R. 1028, is generally applicable to all cases involving jury irregularities while considering the evidence or lack of it: "If it be granted that the finding in question was based upon illogical reasons, or that erroneous conclusions were drawn from the evidence, that, without more, would not constitute misconduct." In the decision just noted, the Supreme Court cited with approval the case of Martin v. De la Garza, Tex.Civ.App., 38 S.W.2d 157, 159, the court there overruling a contention of misconduct involving speculation by the jury on probable testimony of a plaintiff whose evidence had been excluded under Art. 3716, R.S., holding: "It was natural that the jurors should indulge in such speculation as a part of the mental processes by which they arrived at their verdict. The courts will not examine into and analyze and overturn those processes for the purpose of setting aside verdicts, unless, indeed, it is shown that the jury have received and given weight to material testimony not in the record." Likewise, in Lewis v. Halbert, Tex.Civ. App., 67 S.W.2d 430, 432, Judge Hickman, then of the Eastland Court, after a detail of the jury testimony complained of, concluded: "This is no evidence of misconduct. It is merely a picture of the mental processes employed in making deductions from the evidence. If this were condemned as improper conduct on the part of the jurors, it is doubtful if they could ever properly arrive at a verdict in a closely controverted case."

■■ Moreover, it was within the jury's province to fully discuss the matter of whether the testimony of a complaining party, taken alone, sufficiently met the test of a required preponderance. "In determining whether a party to a suit has met the burden of proof by establishing a given fact by a preponderance of the evidence, the number of witnesses testifying upon one side or the other, while not controlling, is a material circumstance which should properly be given due consideration by the jury." McDaniel v. Orr, Tex.Com.App.; 33 S.W. 2d 427, 428.

The trial court's judgment is in all things affirmed.