Charles Franklin POWELL et ux.,
Appellants,

v.

Andrew WHITED, Appellee.

No. 10304.

Court of Civil Appeals of Texas.

Austin.

March 30, 1955.

Rehearing Denied April 13, 1955.

Runge, Hardeman, Smith & Foy, San Angelo, for appellant.

James Little, Big Spring, for appellee.

HUGHES, Justice.

We have the distasteful duty of reversing and remanding this well tried case because of misconduct of the jury.

The suit arose out of the collision of two passenger cars at the intersection of Howard and Webster Streets in San Angelo on November 8, 1953. One car was driven by appellant Charles Franklin Powell, who was plaintiff below, and the other by appellee, Andrew Whited.

The case was tried to a jury. Special issues Nos. 1 through 15A as submitted to the jury were what are referred to by attorneys as "plaintiff's issues." As to these the jury found (1) that appellee, at or just prior to the time of the collision, was driving at a highly excessive and unreasonable rate of speed under existing circumstances which was negligence proximately causing the collision, (2) that appellant's car entered the street intersection first and that appellee failed to yield the right of way to appellant which was negligence proximately causing the collision, (3) that appellee failed to keep a proper lookout for appellant's car and that this was a proximate cause of the collision, (4) that appellee failed to have his car under proper control and that this was a proximate cause of the collision.

The jury also found that appellant's car was in a position of peril immediately prior to the collision but that appellee did not discover this in time to avoid the collision "by the exercise of ordinary care and the use of all means at his hand consistent with the safety of himself, his passenger and his automobile." By issue No. 15 the jury found damages in favor of Mrs. Powell in the sum of $4,500.

Issues 16 through 23 were defensive issues. In answering these the jury found (1) that appellant failed to stop before entering the intersection and that this was negligence proximately causing the colli-

sion (2) that appellant failed to keep a proper lookout and failed to have his car under proper control immediately prior to the collision and that these were proximate causes of the collision.

The misconduct of the jury alleged and established relates to the negative answer given appellants' issue on discovered peril and the affirmative answers to issues finding appellant contributorily negligent.

When the jury in its deliberation reached the discovered peril issue the record shows that the following occurred, Juror Sigmund Lloyd testifying:

"Q. In particular and referring to Special Issue No. 11, and 12, do you recall the issue that inquired of you as a Juror whether or not the defendant, Andrew Whited, discovered the perilous positions of Plaintiffs within such time and distance that by the exercise of ordinary care he could have avoided the collision? A. Yes, sir.

"Q. You recall that issue? A. Yes, sir.

"Q. Was there or not a decided difference of opinion among the Jurors as to whether that issue should be answered Yes or No? A. Yes, sir.

"Q. At first you as a Juror were voting as to how that—how you were voting as to how that should be? A. I voted Yes.

"Q. That he did discover the perilous position within such time and distance he could have avoided the collision? A. Yes, sir.

"Q. Now then, was there any discussion led by Elliott concerning the answer to that issue? A. Yes, sir.

"Q. Do you recall in substance what the discussion was? A. Yes, sir; you want me to tell it?

"Q. Yes, sir, please? A. Elliott said that 'we can't answer that Yes, if we do it will be saying this boy is the same as a murderer,' or something

like that; I can't recall just exactly, and I said, 'well, let me read that, will you please?' and I read the question again, and I said, 'well, yes, I don't believe the boy deliberately run them people down; I don't think that.'

"Q. Elliott did use the word, the words, 'it would be the same as charging the boy with murder, or the same as accusing him of murder?' A. Yes, something like that; I don't know the words.

\*     \*     \*     \*     \*     \*

"Q. After Elliott made that argument concerning the issue of discovered peril did you change your vote? A. Yes, sir.

"Q. You voted how? A. I voted No."

Foreman of the jury Mr. H. P. Yancey testified regarding the discovered peril issues:

"Q. Do you recall Mr. Elliott making the statement, 'if you answered that Yes it would be in effect accusing the boy of malicious murder? .A. That's right.

"Q. He did make that statement? A. He did.

"Q. Did he further make the statement 'he wasn't going to vote to get the boy in trouble?' A. No, I don't think he stated that. He may have stated he wouldn't vote to make a criminal of the boy.

"Q. Words to that effect, then? A. Yes.

\*     \*     \*     \*     \*     \*

"Q. Before Elliott made that statement there was a decided difference of opinion that issue? A. Yes.

"Q. Some of the Jurors were voting 'yes' and some voted to answer 'no'? A. That's right.

"Q. And after Elliott made that statement didn't those Jurors who were voting to answer the issue 'yes' change

their 'yes' to vote 'no'? A. That's right."

It is clear that the comment of Juror Lloyd was not authorized by any statement of law contained in the court's charge, that it was incorrect and very prejudicial. It is also undeniably certain that the interpretation placed by this juror upon the charge was effective in persuading some of the jurors to vote against appellant on this issue.

■ The importance of the discovered peril issues to appellants is that upon favorable findings they would have been entitled to judgment upon the verdict despite their conviction of having been contributorily negligent. 30b Tex.Jur. p. 323.

Appellee's position is, as we understand it, that a juror's argument based on misconstruction of the court's charge is not jury misconduct and he cites several cases as so holding. We will review each case so cited.

Texas Employers' Insurance Association v. Henson, Tex.Civ.App., Eastland, 31 S.W. 2d 669, Texas Commission of Appeals opinions, 48 S.W.2d 970, 52 S.W.2d 247. Jury misconduct was mentioned only by the Court of Civil Appeals. There the court held that a juror's expressed construction of a court's charge as requiring plaintiff in a Workman's Compensation Case to be given the benefit of the doubt in answering issues was not, "as a matter of law \* \* \* misconduct requiring a new trial." [31 S. W.2d 673.]

Universal Atlas Cement Co. v. Oswald, Tex.Civ.App., Waco, 135 S.W.2d 591, affirmed by Texas Commission of Appeals, 138 Tex. 159, 157 S.W.2d 636. Only the Court of Civil Appeals discusses the question of jury misconduct. That court held, Justice Alexander writing, that a juror's mind could not be probed and a new trial granted on his misunderstanding or misapplication of the charge saying [135 S.W.2d 594]:

"While new trials should be granted because of the happening of improper overt acts in the jury room, jurors,

after they have been discharged and allowed to go from under the supervision of the court, should not be allowed to return and impeach their verdict upon a mere showing that they misunderstood the charge or misconceived or failed to give due consideration to the testimony. * * * This case comes within this latter class and the trial court properly refused to grant a new trial because of the alleged misconduct of the jury."

Lewis v. Halbert, Tex.Civ.App., Eastland, 67 S.W.2d 430, 432, opinion by Hickman, Chief Justice. We quote from the opinion:

"The sixth assignment of error complains of misconduct of the jury. In the hearing upon appellants' motion for new trial, only one juror testified, and this is all the testimony given by him: 'In discussing the condition of the school bus, someone in the jury room suggested that it was the duty of the school trustees to keep the bus in good and safe repair, and that the reason that they had not repaired it, was probably, that they were out of money and did not have anything to repair it with. Someone in the jury room also mentioned the amount that Lynn Halbert was getting for driving the school bus, and stated that Lynn Halbert could not have kept the bus in repair on $25.00 per month, and make any money out of the job. We figured Halbert did the best he could with the bus in the shape it was.'

"This is no evidence of misconduct. It is merely a picture of the mental processes employed in making deductions from the evidence. If this were condemned as improper conduct on the part of the jurors, it is doubtful if they could ever properly arrive at a verdict in a closely controverted case. Appellants seem to construe this testimony as disclosing that the jury received other testimony than that given upon the witness stand, but in that construction we do not concur. The evidence discloses

that it was the duty of the school trustees to keep the bus in repair, and that Halbert received a salary of $25 a month as driver. The deduction that probably the school board did not have sufficient money to keep the bus in repair is not the statement of a fact purporting to be within the knowledge of the juror, but rather it is a deduction designed to throw a mantle of charity over the conduct of the board in what appeared to be a violation of its duty."

Maddox v. Texas Indemnity Ins. Co., Tex.Civ.App., Dallas, 224 S.W.2d 495, 499, writ ref., n.r.e., is a case in which the jurors discussed whether a "preponderance of the evidence" would be based solely upon the word of a party. To settle this dispute the jury asked the court and received an affirmative answer.

In Kindle v. Armstrong Packing Company, Tex.Civ.App., Texarkana, 103 S.W.2d 471, the court held it was not misconduct requiring reversal that one juror argued and apparently persuaded other jurors that "proximate cause" meant the "whole" cause. The court in this case based its opinion primarily upon the case of Bradley v. Texas & P. Ry. Co., Tex.Com.App., 1 S.W.2d 861, 863, quoting from that opinion to the effect that jurors should not be " * * * subjected to an inquisition in order that it might be ascertained whether they disobeyed or misunderstood the charge of the court * * *."

We agree with the quote from Bradley but submit that such case does not support the holding in Kindle that an overt act cannot come from a juror's misstatement of the law. The same may be said for all the other cases cited by the court. They simply hold that a juror cannot impeach his verdict by testifying to his own mental errors or misunderstandings.

An overt act is one which is manifest, open or apparent. It is just as much an overt act for a juror to bring outside law before a jury as to present it outside facts. As said in Trousdale v. Texas & N. O. R. Co., Tex.Civ.App., San Antonio, 264 S.W. 2d 489, loc. cit. 494, affirmed Tex., 276 S.W.

2d 242: "All conversation may be an overt act * * *." The misconduct in that case consisted of the declaration by one juror that answers to certain issues were immaterial in view of other answers made and while both courts held that probable injury requiring reversal was not shown there is no intimation in either opinion that such declaration of incorrect law was not an overt act. Similar declarations have many times been held to constitute jury misconduct. See Barclay v. Montgomery-Ward & Co., Tex.Civ.App., Beaumont, 269 S.W.2d 445, writ ref., n.r.e., and authorities there cited.

In Lackey v. Moffett, Tex.Civ.App., Fort Worth, 172 S.W.2d 715, it was held jury misconduct requiring reversal for a juror to disclose to his fellows the legal requirements regarding putting out flares and flags on the highway, a material issue in that case.

In Texas Employers' Ins. Ass'n v. Lightfoot, Tex.Civ.App., San Antonio, 158 S.W. 2d 321, 324, Id., 139 Tex. 304, 162 S.W.2d 929, it was held that reversible jury misconduct was committed by the foreman in advising the jury, incorrectly, as to the provisions of the Federal Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., the court saying:

"It is obvious that the foreman's statement, coupled with the jury's use of it, amounted to misconduct, as a matter of law, and it is equally obvious that the misconduct was harmful and prejudicial to appellant, whose liability was measured and assessed by the false yardstick laid down by the jury in direct consequence of the misconduct."

See also the opinion by the El Paso Court in Whelan v. Henderson, Tex.Civ.App., 137 S.W.2d 150, writ dism., judgm. cor.

There is other evidence of jury misconduct in the record. Juror C. W. Whitfield testified that before the defensive issues of contributory negligence were answered one juror stated that since Mrs. Powell had already been given a money

judgment that it made no difference how those issues were answered and that he, Mr. Whitfield, thereafter changed his vote from denying to finding negligence on the part of appellant. The making of the statement by some juror was confirmed by the foreman, Mr. Yancey, who, according to juror Lloyd spoke up saying "Yes, sir, it makes a difference, they are here on the end of this, they are all to be answered."

■ In view of this prompt rebuke by the foreman we would not hold that misconduct in this respect, standing alone, would require reversal. We have, however, considered such misconduct along with the misconduct relating to discovered peril issues as well as the whole record in reaching the conclusion that injury probably resulted to appellants from all such misconduct. Rule 327, T.R.C.P.; Sproles Motor Freight Lines v. Long, 140 Tex. 494, 168 S.W.2d 642.

■ Appellants have a series of points relating to evidence showing the existence of a stop sign at the street intersection it being contended that there was no evidence to establish such sign as being authorized by law. These points are overruled. The evidence shows that such sign is properly located, has the same appearance as other stop signs in the City and that obedience to it is enforced by City Police. This is sufficient circumstantial evidence to support a finding that such sign was located by authority of the Chief of Police or City Commission as provided by ordinance.

■ The last point relates to the admission in evidence of excerpts from a chart prepared by the American Automobile Association relating to stopping distances of cars at various speeds.

Since appellants prevailed on the issues to which this chart was relevant any error committed in admitting it would be harmless. We will not pursue the matter further since the parties concede such chart to be hearsay and from the authorities cited seem to understand the circumstances

under which and the purposes for which such evidence is admissible. Bowles v. Bourdon, 148 Tex. 1, 219 S.W.2d 779, 13 A.L.R.2d 1.

The judgment of the trial court is reversed and this cause is remanded.

Reversed and remanded.