## MULLINIX v. TEXAS & N. O. R. CO.
### No. 6687.

Court of Civil Appeals of Texas. Texarkana.

April 16, 1953.

Stone & Stone, Jacksonville, for appellant.

Baker, Botts, Andrews & Parish and Roy L. Arterbury, Houston, for appellee.

HALL, Chief Justice.

This action was instituted by appellant, M. I. Mullinix, individually and as administrator of the estate of Minton Morris Mullinix, deceased, against the Texas &

New Orleans Railroad Company, in the District Court of Cherokee County, Texas. The suit was for damages sustained by appellant on account of the death of Minton Morris Mullinix, resulting from a collision between an automobile driven by Minton Morris Mullinix and a freight train operated by appellee. The accident occurred on March 14, 1951, at the town of Dialville, at a railroad crossing. Trial was to a jury and upon its verdict judgment was entered for appellee.

Appellant brings forward one point which is: "The trial court erred in overruling the appellant's motion for new trial because the evidence on the hearing of the motion showed that material misconduct occurred during the jury's deliberation on issue No. 2, and it reasonably appeared from the evidence on the hearing of the motion and the trial of the case from the record as a whole, that injury probably resulted to the appellant and therefore, under Rule 327 of Texas Rules of Civil Procedure, a new trial should have been granted." Special issue No. 2 is: "Do you find from a preponderance of the evidence that upon the occasion in question the train crew, or any member of said train crew, discovered the perilous position, if any, of Minton Morris Mullinix and realized that Minton Morris Mullinix probably would not remove himself from such position of peril, if any, in time so that the train crew, or any member of such crew, in the exercise of ordinary care, by using means at hand, could have avoided the collision with safety to the train and its crew?" The accident occurred about 6:55 A.M., March 14, 1951, as the deceased was driving a sedan car in a westerly direction along a farm to market road, at a crossing over appellee's railroad at a rate of speed estimated by the witnesses to be between fifty and sixty miles per hour. The evidence shows further that the windows of the car were closed and the radio was playing. The sun had risen, the day was clear and cold, and there was nothing between deceased and the railroad crossing or the train approaching the crossing to obscure his vision. The railroad track runs north and south at the point where the accident occurred and the highway runs east and west. The testimony showed the rate of speed of the freight train, which consisted of an engine, seven freight cars and a caboose, to be about thirty miles per hour. The automobile approached the crossing from the fireman's side. The evidence showed further that there were three railroad crossings in and near the town of Dialville, also a station. There is no dispute with respect to the fact that the engineer had sounded his whistle for the station and for two of the crossings and was sounding his whistle for the crossing where the accident occurred. It is also undisputed that the bell of the locomotive had been ringing since shortly before the train entered the town of Dialville and was shut off after the accident occurred. The crossing where the accident occurred is located at the south part of town. The controlling issue submitted by the court to the jury related to discovered peril, which was answered by the jury in favor of appellee.

When the evidence was concluded appellee moved for an instructed verdict, which was overruled. All of the jurors who tried the case testified on the motion for rehearing. The motion for new trial contained the affidavits of three of the jurors, namely, R. A. Colville, J. Bentley Smith and Luther Christopher. These affidavits showed that the three jurors named above had voted in the affirmative on special issue No. 2, which was against appellee. Their affidavits also stated that some one or more of the jurors repeated the statement a number of times during their discussion of the case and before a verdict was reached "that it did not make any difference how the jury answered issues 2, 3 and 4, and that Mr. Mullinix would still recover from the railroad company whatever amount of money we find in answer to issues 5, 6, 7 and 8." Jurors Colville and Smith testified to the effect that if they had known that a negative answer would preclude a recovery of the damages for appellant they would not have answered it in the negative but would have answered the issue in the affirmative so

as to award a recovery by appellant. But each of these jurors testified that the railroad company, from the evidence introduced, was not negligent in failing to stop its train before the accident occurred. Christopher in the main testified as Colville and Smith, but stated that he did not think the question should have been answered in the negative but in the affirmative for the reason that he believed from the evidence that the operatives of the train could have stopped in time to have avoided the accident. He testified that it was his opinion from the evidence that the railroad was negligent in not stopping the train before the accident occurred. He finally stated that he thought that both the operatives of the train and the deceased were guilty of negligence, that they were both at fault. This juror also testified in answer to this question (speaking of the operatives in handling the train):

"Q. Should have discovered quicker and should have realized quicker the danger and they should not have waited until they actually knew that he was going on across? A. Yes, sir.

"Q. But you do, as you said a while ago, say that it was too late when they did put on the brakes, when they realized that he was going right on across? A. Yes, sir.

"Q. And there was nothing they could do about it then? A. I think they waited too late."

This juror was examined at length, both direct and cross. It is clear to our minds that the thought uppermost in his mind was to answer the issue so that appellant would recover. All the other jurors examined testified that they answered issue No. 2 no, as they thought it should be answered from the evidence. We think the testimony of all the jurors save that of Christopher shows that they were influenced by the evidence and answered issue No. 2 in accordance with the evidence as they saw it. Even though two of them, Smith and Colville, testified that they were influenced by the statements made in the jury room, yet they stated from the evidence in the case the appellee railroad company was not negligent in causing the death of the deceased.

■ Appellant insists that the testimony of the three jurors named above showed that they were influenced by the statements made in the jury room and that they answered issue No. 2 based upon what they heard in the jury room. Appellant cites us numerous cases to support this theory. Of course, every case of this character is governed by the facts peculiar to it, Maddox v. Texas Indemnity Ins. Co., Tex.Civ. App., 224 S.W.2d 495 (w/r, n. r. e.), and the cases therein cited. The general rule now governing misconduct of juries is Rule of Civil Procedure 327: "Where the ground of the motion is misconduct of the jury or of the officer in charge of them, or because of any communication made to the jury or that they received other testimony, the court shall hear evidence thereof from the jury or others in open court, and may grant a new trial if such misconduct proved, or the testimony received, or the communication made, be material, and if it reasonably appears from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole that injury probably resulted to the complaining party." In view of the uncertainty in certain particulars of the juror Christopher we think the trial court on that alone would have been justified in overruling the motion for rehearing. In support of the order overruling the motion for new trial it must be presumed that the trial court concluded that no such jury misconduct occurred from which it reasonably appeared that injury resulted to appellant. No agreement was made or attempted to be carried out which would accomplish any particular result. Ford v. Carpenter, 147 Tex. 447, 216 S.W.2d 558, and cases there cited.

■ But had the court not been justified in overruling the motion on account of this juror's uncertainty in the matter, we think it was justified in overruling the motion for rehearing on the record as a whole. Rule 327 states in substance that if it reasonably appears from the evidence both on the hearing of the motion and *the trial of the case* and *from the record as a whole*

that *no injury probably resulted* to the complaining party, then the trial court is justified in overruling the motion. (Italics ours.) All of the evidence was before the trial court. Its order overruling the motion for new trial presents no error and is clearly justified under Rule 327, T.R.C.P. Had the jury answered issue No. 2 "Yes," it is our opinion that the trial court would have been warranted in entering judgment for the appellee non obstante veredicto, for the reason the testimony on the trial of this case is conclusive in favor of appellee.

Under all the circumstances surrounding this case we do not see any error in the action of the trial court in overruling the motion for a new trial. Certainly, if the evidence on the merits of the case was insufficient to sustain a verdict against appellee the misconduct of the jury could in no wise be injurious to him. Lyons v. Cope, Tex.Civ.App., 217 S.W.2d 116.

The judgment of the trial court is affirmed.