**Francis N. KEAHEY et ux., Appellants,**

**v.**

**L. L. JONES et ux., Appellees.**

**No. 6609.**

Court of Civil Appeals of Texas.

Amarillo.

June 4, 1956.

Ross H. Scott, Dallas, for appellants.

Smith, Teed, Wade & Waters, Pampa, for appellees.

PITTS, Chief Justice.

This is an appeal from a judgment denying recovery upon a jury verdict for alleged damages in the sum of $40,510 in a suit filed by appellants, Francis N. Keahey and wife, Neola Keahey, against appellees, L. L. Jones and wife, Mrs. L. L. Jones, seeking damages by reason of the death of their minor son, Arthur George Keahey, as a result of a collision between a bicycle the boy was riding and a motor vehicle owned by appellees and being operated on the occasion by Mrs. L. L. Jones on a paved road on or about March 24, 1955. Appellees were the only eye witnesses to the collision except their small daughter who was riding in the motor vehicle with them. Mrs. L. L. Jones testified in effect that she was operating their motor vehicle, which was a Chevrolet truck with a grain bed on it, at a slow rate of speed on a paved road, about 20 feet wide, between New Mobeetie and Old Mobeetie, in Wheeler County, Texas, at about 6:00 o'clock P.M. while it was daylight, when the collision occurred. She was driving north on the east side of the pavement which had no center stripe when she first saw the boy approaching her from the opposite direction about 150 yards away, riding his bicycle on the east side of the pavement. Her husband then said, "Look out, Myrtle, there is a boy on a bicycle" and she replied, "Yes, I see him." As the boy continued to approach her on the same side of the highway she was traveling, she began to pull her vehicle slowly to her left and took her foot off of the accelerator. She continued to slowly move and pull her

vehicle to the left but when the boy got within 30 or 40 feet from her he pulled to his left and got entirely off of the pavement and onto the shoulder east of the pavement and continued to approach her but entirely off of the pavement and did nothing to indicate to her that he was going to do anything other than continue on the east shoulder of the highway until they passed each other. But just as the two vehicles were about to pass each other going in opposite directions, the boy suddenly and without warning made an abrupt turn to his right back onto the pavement directly in front of Mrs. Jones' vehicle and into its path while she continued to move slowly to her left. The boy's unexpected quick movement directly into the path of Mrs. Jones' vehicle happened so fast that there was nothing she could do other than pull her vehicle further to her left in an effort to avoid the collision. As the boy turned in front of her vehicle he continuously pulled his bicycle into the path of her motor vehicle as she continuously tried to get away from him but she had only a moment's time to try to avoid the collision. If she had pulled her vehicle to her right, the collision would have occurred quicker. Under these related facts and circumstances, the collision occurred which resulted in the death of the 10-year old boy.

The testimony of L. L. Jones fully corroborates that given by his wife. He also testified that when the boy suddenly turned his bicycle off of the east shoulder of the highway quickly into the path of their motor vehicle there was hardly any time left for his wife to react in an effort to avoid the collision.

The testimony of appellants' witness, Monty Cotter, a highway patrolman, corroborated that given by Mr. and Mrs. L. L. Jones. He testified that he and two other officers appeared on the scene after the collision where he found marks on the pavement showing the place where the collision occurred and that measurements showed that such occurred 7 feet from the west side of the pavement and 13 feet from the east side of the pavement. He further testified that, from the marks on the pavement and the distance the Chevrolet truck travelled after the collision, in his opinion the truck was traveling between 5 and 15 miles per hour when the collision occurred.

Based upon these facts, the jury exonerated Mrs. L. L. Jones of any act of negligence by reason of speed, failure to apply brakes, failure to operate her motor vehicle on her side of the highway, failure to turn to her right immediately before the collision and it further found that she was acting under emergency conditions at the time of the collision. The jury further found that immediately prior to the collision, Arthur George Keahey, operated his bicycle across the highway from the east side thereof toward the west side thereof and directly into the path of the oncoming truck being operated by Mrs. L. L. Jones at a time when he could not do so with safety, which was a proximate cause of the collision that resulted in his death. In Special Issue No. 5, a series of 7 designated questions were asked the jury concerning the doctrine of discovered peril. Answers to the latter 6 thereof depended upon an affirmative answer to the first question propounded. In answer to the first question of the series propounded, the jury found that Arthur George Keahey was not in a position of peril immediately before the collision, thus leaving the remainder of the series of questions not answered, since a negative answer was given to the first question.

Based upon these jury findings, the trial court rendered judgment denying appellants any recovery from which judgment they perfected an appeal. Nowhere have appellants challenged or attacked by a point of error any finding of the jury. In fact, appellants have not, in their brief, presented a single point of error. They have presented one and only one "Proposition" contending that this case should be reversed and remanded because of jury misconduct during its deliberation prior to its answer given to the discovered peril issue but after it had given answers to other issues exonerating Mrs. Jones of any negligence. Appellants charge jury misconduct existed because one

juror, Jack Hiett, stated during their deliberation that it made no difference how the jury answered the discovered peril issue since the answers previously given by the jury would determine the judgment to be rendered, thus provoking a discussion of his claims, which he supported by further stating his knowledge of other such cases and his former jury experience in similar cases, all of which appellants claim constituted jury misconduct because it injected new evidence into the jury's discussions and informed it of the legal effect of its answers, which probably resulted in injury to them, since other jurors were probably induced thereby to make findings against appellants and such caused at least one juror to change his vote on the issue being discussed. It seems that the alleged jury misconduct concerns only the jury's answer to the discovered peril issue.

■ Appellees have challenged appellants' one proposition presented upon the grounds that it is "multifarious, argumentative and not in compliance with Rule 418." There is merit to appellees' challenge since a point of error is an indispensable part of a brief on appeal and an alleged error not embraced in any point of error should not be considered. Wagley v. Fambrough, Tex. Civ.App., 163 S.W.2d 1072, affirmed 140 Tex. 577, 169 S.W.2d 478. Any question raised on any point of error not briefed as provided for in Rule 418, Texas Rules of Civil Procedure is waived. Dreeben v. Sidor, Tex.Civ.App., 254 S.W.2d 908; Rayburn v. Giles, Tex.Civ.App., 182 S.W.2d 9. Rule 418 provides that a point of error should be concisely stated directing the court's attention to the alleged error relied upon for a reversal. According to the provisions of Rule 418, a point of error should not be argumentative and it is multifarious if it embraces more than one specific ground of error or if it attempts to attack several distinct and separate rulings of the trial court. Johnson-Sampson Construction Co. v. W. & W. Waterproofing Co., Tex.Civ. App., 274 S.W.2d 926. For the reasons stated, appellants' have not met the requirements of the foregoing authorities in their presentation made to this Court.

Appellants have, in a general way, charged jury misconduct in a single "Proposition" presented without further charging either in a point or a proposition that any particular finding of the jury was wrong or not justified under the evidence presented. They imply in their proposition and in their argument that it was absurd for the jury to find that the deceased boy was not in a position of peril immediately before the collision and assert that there was no evidence to support such a negative finding made by the jury. The question was propounded in the usual form by the use of the following language.

"Do you find from a preponderance of the evidence, that Arthur George Keahey immediately before the collision was in a position of peril?"

The jury answered "No." The evidence in this case is different from that usually given in a discovered peril case. In this case the evidence conclusively reveals that only moments before the collision occurred the boy on the bicycle, when 30 or 40 feet away from the approaching motor vehicle, was riding east of the pavement on the shoulder of the highway and away from danger. It is reasonable to assume that the jury, by giving a negative answer to the question, thought the inquiry had reference to the position of the boy immediately before the collision when only moments before it occurred he was riding safely on the shoulder east of the highway. The evidence conclusively reveals that such was true and that only momentarily thereafter he quickly turned into the path of the approaching motor vehicle. The question as propounded did not clearly present to the jury what was meant by the phrase "immediately before the collision." It can now be easily observed that because of the conclusive evidence showing that the position of the boy momentarily changed from one of no danger to one of perilous danger immediately before the collision, the question would have been more properly presented should it have inquired if the boy "immediately before the collision was in a position of peril after he turned his bicycle to his right and onto the pavement."

However, for the reasons hereinafter stated, it is our opinion that the evidence did not raise any issue on the question of discovered peril. As shown in the case of Turner v. Texas Co., 138 Tex. 380, 159 S.W.2d 112, 115, the doctrine of discovered peril if it may be applied to the uncontroverted facts presented in this case must reveal the following three elements: (1) the exposed condition of the boy as brought about by his own negligence; (2) the actual discovery by Mrs. L. L. Jones of his perilous situation in time to have avoided injury to him by the use of all the means at her command, commensurate with her own safety and the safety of the others in the car with her; and (3) the failure of Mrs. Jones thereafter to use such means.

In the case at bar after discovering and realizing that the boy had suddenly turned his bicycle into the path of her moving automobile, Mrs. Jones was under the duty during that brief period of time before the collision occurred of exercising reasonable care in the use of all means at her command, consistent with the safety of herself and the others in her car, to avoid the collision in question. In the case of Parks v. Airline Motor Coaches, Inc., 145 Tex. 44, 193 S.W.2d 967, 969, the court held that the rule allowing recovery of damages under the doctrine of discovered peril is exacting and further held that as applied to this case the sole question to be determined in such a matter is whether or not there is evidence that the driver (Mrs. L. L. Jones) had actually discovered the perilous position of the boy in question in time to have avoided the collision, by the use of all the means at her command, consistent with the safety of. herself and the others with her. The court there further held that the burden was upon the plaintiff to establish such facts. If this is not done, no basis for recovery has been established by reason of the doctrine of discovered peril. In the case at bar we are faced with the question of whether or not appellants offered sufficient evidence to even raise an issue that Mrs. L. L. Jones failed to use all the means at her command to avoid the collision after she discovered the perilous position of the boy on the bicycle.

According to the record before us, it appears that mere moments of time as shown constituted too brief a period for Mrs. Jones to have done any more than she did to try to save the boy. Therefore, we believe that appellants have not discharged such burden of proof and in fact have not even raised such by inferences. Schuhmacher Co. v. Posey, 147 Tex. 392, 215 S.W.2d 880. In fact, we believe the contrary has been conclusively shown by the evidence heard.

It may be here of interest to note the language used by the Supreme Court in the case of Whited v. Powell, Tex., 285 S.W.2d 364, 366, when it said:

"It is true, of course, that the conduct of one who, after discovering and realizing the peril of another in imminent danger of being injured, fails to use ordinary care to avoid injuring such other person, is very nearly the equivalent of deliberate and intentional misconduct. Sugarland Industries v. Daily, 135 Tex. 532, 143 S.W.2d 931. It is not, however, the exact equivalent."

For the reasons stated any answer given by the jury to the issue of discovered peril was immaterial because the issue itself concerning the doctrine of discovered peril had not been satisfactorily raised by the evidence and such question as submitted was immaterial.

But be that as it may, in their brief appellants have charged, as best we can determine, that jury misconduct resulted because of alleged improper statements made by the juror, Jack Hiett, which statements caused some of the jurors at least to give an answer to the discovered peril issue inconsistent with their honest convictions; that the alleged jury misconduct occurred and the negative answer was given to the discovered peril issue after the jury had by former answers excused Mrs. Jones from any acts of negligence in connection with the collision. Appellants charge that juror Jack Hiett stated at such a time during the jury's deliberation that it made no difference how the jury answered the issue concerning discovered peril because the jury's former an-

swers would determine the judgment to be rendered. Other jurors took issue with Jack Hiett's statement but he sought to support his position by relating former observations and experiences of his as a juror in previous similar cases. Appellants further contend that such constituted jury misconduct which probably resulted in injury to them.

For the reasons previously stated we do not think probable injury has been shown. At any rate, the matters charged were heard by the trial court in a motion for rehearing, which motion was overruled and the appeal resulted. Three jurors had previously given affidavits, which were attached to the motion for a new trial and they also testified at the hearing for a new trial. While there was testimony to the effect that the juror Jack Hiett made the statements as alleged, the testimony there given was uncertain about its effect, if any, on other jurors. The testimony there given likewise seemed to improperly concern the mental processes of the jurors in reaching their verdict more than it did any overt acts of the jurors during the deliberations. The testimony of the jurors reveals that the jury read and discussed the issues during deliberation and answered unanimously each issue in its consecutive order and in accordance with their version of the evidence heard. No juror sought to change his vote on any issue after the issues had been answered.

A similar situation to the one here presented arose in the case of Mullinix v. Texas & N. O. R. Co., Tex.Civ.App., 257 S.W.2d 457, and there the Supreme Court held that a motion for a new trial had been properly overruled upon considering the record as a whole wherein it was charged in a motion for a new trial that the votes of three jurors had been influenced in giving their answers to a special issue on discovered peril because of the statements of other jurors to the effect that the jury's answer to that said special issue would be immaterial as a result of other answers given by the jury, particularly since it did not reasonably appear that injury resulted to appellants. The court also there held that the un-

certainty of the testimony given by the jurors at the hearing of the motion for a new trial justified the trial court in overruling the said motion. In our opinion, the same rule should apply in the case at bar because of the uncertainty of the testimony given by the jurors during the hearing upon the motion for a new trial.

In the recent case of Trousdale v. Texas & New Orleans Railroad Co., 154 Tex. 231, 276 S.W.2d 242, the Supreme Court held that alleged jury misconduct must be material and it must appear from the record as a whole that injury probably resulted to the complaining party. In that case jury misconduct was charged because of statements made by a juror during deliberation to the effect that jury findings on the issues of negligence and unavoidable accident were immaterial after the jury had answered damage issues and because the statement, together with a discussion thereof, induced two jurors to change their votes in answer to a certain special issue to the probable injury of the complaining party. The court there held that upon viewing the record as a whole injury did not reasonably appear and that the alleged misconduct had not been shown to have been prejudicial.

In the recent case of Whited v. Powell, Tex., 285 S.W.2d 364, the jury, during its deliberation, discussed the legal effect of its answer to a discovered peril issue, which discussion and consideration resulted in two jurors changing their votes on the issue. Nevertheless, the Supreme Court there held that a jury is not guilty of misconduct and its verdict need not be set aside merely because one or more of the jurors simply misconstrued a portion of the court's charge during deliberation and stated an erroneous interpretation thereof to other members of the jury as the record reveals juror, Hiett, did in the case at bar. The court there further said:

"The mere discussion by the jury of the legal effect of their answers does not, in the absence of an agreement or showing that they designedly attempted to frame their answers so as to accomplish a particular result, constitute misconduct of the jury. Maryland Cas-

ualty Co. v. Hearks, 144 Tex. 317, 190 S.W.2d 62."

In the case at bar no showing has been made to the effect that the jurors sought designedly to frame any answers so as to accomplish any particular result.

Appellants had the burden of establishing by a preponderance of the evidence to the satisfaction of the trial court that jury misconduct occurred and then to convince the court that such misconduct probably resulted in injury to them. It must be presumed that they failed in their attempt, therefore, according to the record presented and the authorities cited, it is our opinion that the trial court was justified in overruling appellants' motion for a new trial. For the reasons stated, the judgment of the trial court is affirmed.