## BLEDSOE v. PRITCHARD.
### No. 4778.

Court of Civil Appeals of Texas. Amarillo.
June 21, 1937.

Lackey & Lackey, of Stinnett, for plaintiff in error.

Harney & Dally, of Borger, and Curtis Douglass, of Panhandle, for defendant in error.

FOLLEY, Justice.

Mrs. Sallie Pritchard, the defendant in error, instituted this suit in the county court of Hutchinson county, Tex., against R. H. Bledsoe, plaintiff in error, and his wife, Mrs. R. H. Bledsoe, upon a promissory note executed by Bledsoe and wife, payable to Mrs. Pritchard, in the sum of $350,

and for interest and attorneys' fees. We shall designate the parties as in the trial court. The defendants answered by demurrers and further pleaded that the plaintiff was indebted to them for keeping, boarding, and taking care of her two nieces, Misses LaVerne and Elise Owenbey, for a period of seven months in the amount of $315; that the defendants so kept said nieces at the special instance and request of the plaintiff upon her agreement to reimburse the defendants; that they executed the note and paid it down to the amount the plaintiff owed them, and informed her they would not pay any more on the note; that they only executed the note at the request of the plaintiff when they asked her to pay the amount due for keeping the said nieces in order that the plaintiff would have something to show the father of the two nieces, and the nieces themselves, by which the plaintiff might prevail upon her brother, Joe Owenbey, the father of the girls, to reimburse the plaintiff; that it was the understanding between the parties, at the time the note was executed, that the defendants would not have to pay the note, and the plaintiff so agreed with them, and that the only purpose of the note was to assist Mrs. Pritchard in collecting the amount due from her brother or the nieces themselves; that when the note was paid down to the amount plaintiff owed defendants, the plaintiff said she could not collect any money from her brother and therefore she would send the note to the defendants as a canceled note; and, under the facts as pleaded by defendants, there was no consideration for the note. This pleading was sworn to by the defendant R. H. Bledsoe.

In response to this plea of the defendants, the plaintiff filed a trial amendment in which she raised the question that such a defense as alleged by defendants came within the purview of the statute of frauds, article 3995, subd. 2, Revised Civil Statutes of Texas, in that any promise of the plaintiff as alleged by defendants would necessarily have to be in writing before plaintiff would be compelled to answer for the debt or default of her brother or nieces, and further denied that she made any such promise.

The defendants testified in the trial of the case substantially as they had pleaded in their answer, except they each admitted on cross-examination that they were looking to Joe Owenbey primarily for the debt due them for keeping the girls and that Mrs. Pritchard had told them that if Joe Owenbey did not pay defendants for the board of the girls, that she, the plaintiff, would do so. This conversation shows by the testimony of the defendants to have taken place shortly after the nieces went to the home of the defendants. The note was made some seven months later. Each of the defendants testified that it was understood between them and the plaintiff that the defendants would not have to pay the note, but that it was made only for the purpose of inducing Joe Owenbey to pay the obligation. The plaintiff testified that the note was made for money loaned by her to the defendants, and that she never at any time promised to pay for the board of her nieces. The plaintiff testified that she gave her check to the defendants for the amount of the note at the same time the note was executed and that she loaned defendants this money at that time and that she was not paying for the board of her nieces. The defendants admitted that they received this money by said check at the time they executed the note, but that the money was not a loan to them but the payment of the debt of the plaintiff to them. The testimony reflects that Mrs. Owenbey, mother of the girls, was dead at the time the two girls went to the home of the defendants, and that their father, Joe Owenbey, was away from home and in Colorado during their stay at defendants' home. Joe Owenbey returned home about the time the note was executed and the girls went back to his home in Stinnett, Tex., to live with him. The home of the defendants was also in Stinnett, while that of the plaintiff was in Plemons, Tex., in the same county. One of the girls, LaVerne Owenbey, testified that she and her sister lived in defendants' home for seven months, but that she did not know that anybody was responsible for their upkeep. She admitted that she would rather live in Stinnett than at Plemons with her aunt, Mrs. Pritchard, but she supposed they were staying at the home of the defendants only as guests at the request of Mrs. Bledsoe.

The trial court, at the close of the evidence instructed the jury to find for the plaintiff against the defendant R. H. Bledsoe, and entered a judgment against the said defendant for the amount of the note, less the payments admitted by the parties, which amounted to $344.94, including the interest and attorneys' fees. From this verdict and judgment, R. H. Bledsoe appeals.

The defendant first assigns as error the failure of the court to submit to the jury the

defensive issues of the defendants in general, and more particularly, by not submitting the issue of plaintiff's indebtedness to the defendant.

The second assignment is that the court should have submitted to the jury the question as to the intention of the parties when the note was executed, which note defendant claims was executed only for the purpose of assisting the plaintiff in collecting the money from her brother that was due the defendants for the upkeep of the two girls.

Since these two propositions are so similar in nature and so identical in general, we will dispose of both assignments together.

The plaintiff urges the statute of frauds would bar recovery by defendants of any offset for the upkeep of the two Owenbey girls. We think it is well settled that the plaintiff would have been obligated to pay the defendants for this board bill if she had agreed to do so unconditionally and the girls had been accepted in the home of defendants under such understanding. If the plaintiff had so promised and the defendants had relied thereon, it would have become plaintiff's own obligation and debt and not that of her brother or nieces, and therefore would not have come within the statute of frauds. Hill v. Kelsey et al. (Tex. Civ.App.) 89 S.W.(2d) 1017; Kinney v. Pearce (Tex.Civ.App.) 65 S.W.(2d) 502, and authorities therein cited. In the present case, however, the defendants admitted on cross-examination they were looking to Joe Owenbey primarily for this obligation, and that if he did not pay the debt, then Mrs. Pritchard was expected to do so. The defendant R. H. Bledsoe testified that Mrs. Pritchard promised to pay the debt if Owenbey did not. Such a conditional promise, we think, would bring the alleged promise within the statute of frauds, under the authorities above cited. But the defendants say that the money they received at the time the note was executed was in settlement of the debt for the keep of the two girls. If this is true, then the plaintiff executed the promise she is alleged to have made. If she did so execute the alleged promise, such takes it out of the statute of frauds. Binge v. Gulf Coast Orchards Co. et al. (Tex.Civ.App.) 67 S.W.(2d) 1045. Simpkins on Contracts (3d Ed.) page 113, reads as follows:

"Rule IV. Though the contract, as made may be within the statute, yet if the consideration has been paid, or it is wholly executed on one side, then the statute does not apply."

But we think the statute of frauds is not the decisive issue in this case. We have in this record the assertion of the plaintiff that the note was given for money she loaned to the defendants. The defendants deny this and assert that plaintiff paid a debt she owed them and the note was given not to obligate the defendants, but to assist the plaintiff to collect the money from her brother. The defendants have pleaded under oath a failure of consideration, a conditional delivery of the note, and, though the pleading is vague in this respect, we think it is sufficient to raise the issue that the note was accommodation paper. Section 16 of art. 5932, Revised Civil Statutes, under our Negotiable Instrument Act, provides:

"As between immediate parties, and as regards a remote party other than a holder in due course, * * * the delivery may be shown to have been conditional, or for a special purpose only, and not for the purpose of transferring the property in the instrument."

In construing this provision, Tex.Jur. vol. 6, page 277, says:

"Under this provision of the statute and according to the rule as it existed at common law, it is generally held that in a suit between the original parties or against those taking with notice or after maturity parol evidence is admissible for the purpose of showing a conditional delivery of the instrument, as, for instance, that a promissory note, though absolute in form, and delivered to the manual possession of the payee was not intended to take effect as a binding obligation until the happening of a stipulated contingency."

In the case of Rector v. Evans (Tex.Com. App.) 6 S.W.(2d) 105, 107, in which the Supreme Court approved the holdings of the Commission of Appeals, the court held that an allegation that a note was executed with the understanding that it should not bind the maker unless the payee recovered judgment against other parties, constituted a good defense. In that case there was the issue of fraud which is not presented by the pleadings of the defendants in the instant case, yet the theory of a conditional delivery of the note involved in that case is also in the case before us. From the opinion in the Rector Case, we quote:

"Evans' pleading includes charges of an agreement that the note would be destroyed

or returned to him if it turned out that Rector should not be able to get a judgment on the other claims and that he failed to get that judgment. If those charges be true, there was, we think, delivery 'for a special purpose only'; i. e., for holding by Rector to abide results in the other cases, with surrender or destruction of the 'note' (paper as well as obligation) if he lost in those cases.

"Evans charged that Rector's promise to sue upon the other claims and either to recover judgment thereon or destroy or return the note was made for the purpose and with the result of securing his signature and without any then present intent on Rector's part to perform his promises. If the charge be true, it makes a good defense."

On a question of the exclusion of testimony that was offered for the purpose of showing a delivery of a note for a special purpose, the Court of Civil Appeals at Eastland in the case of Davis v. Jarnigan, et al., 59 S.W.(2d) 281, 283 (writ denied) had this to say:

"Propositions 4 and 5 are to the effect that the court committed 'fundamental error' in permitting the plaintiffs to offer testimony to establish the alleged contemporaneous parol agreement entered into at the time of the execution and delivery of the note. The contention is that the effect of such evidence was to ingraft upon a written instrument a contemporaneous parol agreement and that it did not establish 'failure of consideration,' etc.

"These propositions are overruled. The action was between the immediate parties to the note, and the evidence was admissible to show that the note, though absolute in form and delivered to the manual possession of the payee, was delivered for a special purpose and not intended to take effect as a binding obligation or as a complete and final settlement between the parties, but was for holding by Davis to abide the results of the engineer's estimates and the accomplishment of the special purpose. * * *

" 'The excluded testimony tended to support defendants' theory; that is, that the notes were signed for a special purpose, with the understanding that an accounting would be had later, and all errors, if any existed, corrected and the notes reduced to correspond. This evidence, in our opinion, should have gone to the jury for what it was worth.' "

On the question of accommodation paper, the testimony is confusing as to whom the accommodated party was, but if the plaintiff obtained the note in order to collect money she would otherwise have to pay, as alleged and testified to by defendants, we take it that she would have received the benefits she desired and therefore would have been the accommodated party. In a case on this question the Commission of Appeals of Texas, in King v. Wise, 282 S.W. 570, 572, said that notwithstanding the indefiniteness and incongruity of the pleading and testimony, such a question is a fact issue for jury determination. From the opinion in that case we quote:

"There is another view of the case made which leads to the same result. King alleged and testified that he signed each of the notes merely 'as an accommodation' party. He does not, either in pleading or proof, indicate the party accommodated with that degree of certainty necessary to a determination, as a matter of law, whether it was Boyd or Showers. That Boyd never requested King to sign either note is undisputed. That Boyd, upon his first knowledge of King's signature, remonstrated is likewise established, as is the fact that (in Boyd's absence) Showers requested King to sign. If the testimony of Boyd and King be true, there was no accommodation of Boyd, and, perforce, Showers was the accommodatee. On the other hand, if the testimony of Showers (to the effect that the cattle deal had not been closed when King signed, and that he would not have closed it otherwise) be true, Boyd was the accommodated party. Notwithstanding the indefiniteness (and some incongruity) of the pleading and testimony, that is a matter which requires a determination of fact issues by a jury before the rights of the parties may be given proper disposition. For it would be flagrantly contrary to natural justice to permit recovery by, or in behalf of, the accommodated party, and of course the law would not allow that course. Brady v. Cobbs (Tex. Civ.App.) 211·S.W. 802; Central Bank, etc., Co. v. Ford (Tex.Civ.App.) 152 S.W. 700; Joyce, Defenses to Commercial Paper (2d Ed.) § 55."

From the cases quoted and from the authorities cited therein, it is our opinion that the case before us presented the issue as to a conditional delivery of the note for a specific purpose and we think that question should have been submitted to the jury. Also the issues as to whether the paper was accommodation paper and failure of consideration for the note were rais-

ed by the pleading and the evidence at least to the extent that they should have been submitted to the jury. If what the defendants testified to was true, there was no consideration whatever for the execution of the note, and further it was accommodation paper. At least the jury should have been given an opportunity to pass on these questions. · It is not so much a question in this case as to whether or not there was an unconditional promise on the part of plaintiff to pay for the board of the girls, but whether or not she did so pay therefor when she gave the check to the defendants. We think the trial court erred in not submitting these defensive issues to the jury and we sustain these assignments.

Defendant's third assignment complains of the court's failure to submit to the jury the question as to whether the plaintiff agreed to cancel and return the note to defendants at the time Bledsoe made the last payment. We think this is more of an evidentiary matter than an ultimate issue in the case and would be taken care of by jury answers to the other issues in the case. We overrule this assignment.

· The judgment is reversed and the cause remanded.