ANDREW WHITED V. CHARLES FRANKLIN POWELL ET UX

No. A-5270. Decided January 4, 1956.
(285 S.W. 2d Series 364)

*Elton Gilliland, Hartman Hooser* and *James Little,* all of Big Spring, for petitioner.

The Court of Civil Appeals erred in holding that the remark of one of the jurors, while considering their answer to a special issue (which remark is set forth in the opinion of the Court) was a misconduct of the jury, when said comment was only the expression of a misconstruction of the language of the court's charge and an expression of opinion by the juror and was not an overt act necessitating a reversal of the judgment and remand of the cause to the trial court. Kindle v. Armstrong Packing Co., 103 S.W. 2d 471, no writ history; Maddox v. Texas Indmn. Ins. Co., 224 S.W. 2d 495, refused no reversible error; Akers v. Epperson, 141 Texas 189, 171 S.W. 2d 483.

*Runge, Hardeman, Smith & Foy* and *Joe H. Foy*, all of San Angelo, for respondents.

In reply respondents cited Texas Emp. Ins. Ass'n. v. Lighfoot, 158 S.W. 2d 321; Whelan v. Henderson, 137 S.W. 2d 150, error dismissed, judgment correct; Lackey v. Moffett, 172 S.W. 2d 715.

MR. JUSTICE WALKER delivered the opinion of the Court.

The parties will be referred to as they were designated in the trial court. The plaintiffs, who are husband and wife, sued to recover damages which they sustained in a street intersection collision between the automobile driven by the husband and occupied by the wife as a passenger and the vehicle operated by defendant. Judgment in favor of the defendant was entered by the trial court on the verdict of the jury. The Court of Civil Appeals has reversed and remanded the case for a new trial on the grounds of jury misconduct. 277 S.W. 2d 819. We have concluded that the overt acts upon which the Court of Civil Appeals based its judgment do not constitute misconduct and that the judgment of the trial court should be affirmed.

In their answers to special issues, the jury found that the collision was proximately caused by the primary negligence of the defendant in driving at an excessive speed, in failing to yield the right of way, in failing to keep a proper lookout, and in failing to have his vehicle under proper control, and by the contributory negligence of the plaintiff husband in failing to stop before entering the intersection, in failing to keep a proper lookout, and in failing to have his car under proper control. In response to Special Issue No. 10, the jury found that immediately prior to the collision the plaintiffs occupied a position of peril. Special Issue No. 11, which inquired whether the defendant discovered that the plaintiffs were in a position of peril

within such time and distance that by the exercise of ordinary care and the use of all means at his hand consistent with the safety of himself, his passenger and his automobile, he could have avoided the collision in question, was answered in the negative. The jury also determined that the collision was not the result of an unavoidable accident, and that the plaintiffs sustained damages in the amount of $4,500.00.

While the jury was considering Special Issue No. 11 and was divided as to the proper answer thereto, the juror Elliott, in connection with his discussion of the evidence said, "We can't answer that 'Yes'; if we do it will be saying this boy is the same as a murderer. I won't vote to make a criminal of the boy." Thereupon the juror Lloyd requested that he be permitted to read the question again, and after doing so said, "Well, yes, I don't believe the boy deliberately run them people down; I don't think that." After some further discussion, the nature of which is not shown by the record, Lloyd and at least one other juror, who had been voting for an affirmative answer to the issue, changed their votes, and the issue was answered in the negative.

No one was killed in the collision, and there is no evidence indicating that the injuries sustained by the plaintiffs might result in death. Anyone hearing the statement made by the juror Elliott and knowing the circumstances of the case could not fail to understand that his reference to murder was simply a figure of speech. It is obvious that the only thoughts which he intended to express, and the only impressions which could reasonably have been received by the other jurors from the statement he made, are that an affirmative answer to Special Issue No. 11 would be equivalent to finding (1) that the defendant deliberately ran into the plaintiffs, and (2) that the defendant was guilty of criminal misconduct. The statement made by the juror Lloyd after again reading the question indicates that he was impressed by the first of these implications.

■ It is true, of course, that the conduct of one who, after discovering and realizing the peril of another in imminent danger of being injured, fails to use ordinary care to avoid injuring such other person, is very nearly the equivalent of deliberate and intentional misconduct. Sugarland Industries v. Daily, 135 Texas 532, 143 S.W. 2d 931. It is not, however, the exact equivalent. The jury was expected to return affirative answers to the discovered peril issues if it believed that the collision was proximately caused by the negligent failure of the defendant,

after discovering the peril of the plaintiffs, to use means by which the collision could have been avoided. The plaintiffs did not have the further burden of proving that the defendant acted deliberately or intentionally. It is clear, therefore, that the statement made by Elliott conveyed to the other members of the jury an erroneous interpretation of Special Issue No. 11.

There is no indication that either Elliott or Lloyd possessed any unusual experience or education qualifying either of them as an expert on the meaning of the English language or on the law, or that either of them represented himself to be an expert on such matters. We must assume that Elliott was simply an average juror who, after reading the issue on discovered peril, expressed the opinion that an affirmative finding would be equivalent to saying that the defendant deliberately ran into the plaintiffs. Juror Lloyd, another apparently average juror, insisted on reading the issue again, and after reading it concurred in Elliott's interpretation. It is not suggested that any facts outside the record were discussed, and there is nothing in the record to indicate that the two jurors reached their conclusion by any means other than by reading and studying the issue in question, together with the facts in evidence. We regard this as a pure case of an express misconstruction of the charge of the court.

The parties have not cited and we have not found a case in which the exact question was decided by this Court. In Kindle v. Armstrong Packing Co., 103 S.W. 2d 471, no writ of error, while the jury was divided nine to three in favor of an affirative answer to the proximate cause issue, one of the jurors argued at length that the term "proximate cause" means the whole cause. He also represented himself as something of an expert, stating that he had served on juries, had been around the court house, and had come in contact with the words or their meaning. After further deliberation the jury agreed that the term means the whole cause, and returned a negative answer to the issue. It was held that this did not constitute jury misconduct.

The case of Whelan v. Henderson, 137 S.W. 2d 150, Texas Civ. App., writ dis. judg. cor. was decided two years later. There the foreman stated to the other members of the jury that " 'the way I always understood the charge was that if there was any doubt, it must be given to the defendant.' " The jurors then agreed that the facts against the defendant must be established beyond a doubt as in criminal cases, instead of by a preponder-

ance of the evidence, and answered the issues favorably to the defendant. The judgment of the trial court on the verdict was reversed on the ground that these facts showed misconduct which controlled the verdict of the jury, but the appellate court was of the opinion that other errors had been committed in the trial of the case. On motion for rehearing, the court apparently recognized that the holding of the Kindle Case is applicable to an express misconstruction of the court's charge, but said:

"* * * We think it apparent that the conduct of the jury in the instant case was an effort of the jury to follow its own method of reasoning rather than failure to properly understand and apply the court's charge on preponderance of the evidence.

* * * * *

"Here, the evidence of the jurors shows the jury was not discussing any part of the court's charge, they were not trying to arrive at the meaning of the 'preponderance of the evidence,' but assumed for themselves the rule they adopted and applied in dciding the facts of the case."

Plaintiffs also cite Texas Employers' Ins. Ass'n v. Lightfoot, Texas Civ. App., 158 S.W. 2d 321, reversed on other grounds, 139 Texas 304, 162 S.W. 2d 929, and Lackey v. Moffett, 172 S.W. 2d 715, Texas Civ. App., no writ. The overt acts which occurred in these cases did not amount merely to a misconstruction of the charge, but brought to the attention of the jurors facts outside the record regarding the provisions of certain laws which were not covered by the court's charge.

We have concluded that an express misconstruction of the court's charge, which does not bring to the attention of the jury law or facts outside the record, should not be regarded as jury misconduct within the meaning of Rule 327. Throughout the development of our present method of jury submission, the emphasis has been placed upon the use of a form of charge which will satisfy certain legal requirements, including separate submission of each relevant and ultimate issue, proper placing of burden of proof, avoiding comments on the weight of the evidence, concealment from the jury of the legal effect of their answers, and the use of definitions and instructions which are technically correct from a legal standpoint. The clarity of the charge from the standpoint of the jury has occupied a subordinate role. Some issues and definitions are occasionally misconstrued by lawyers and courts, and it would be most unreal-

istic to expect that all members of the jury as ordinary laymen would thoroughly understand every portion of a complicated charge.

Before undertaking to answer an issue submitted by the court, the jury must try to arrive at the meaning of the question. The members of the average jury have varying abilities and educational and business backgrounds. Some are better able than others to understand the charge of the court. It is reasonable to assume that one or more of the jurors will frequently misunderstand the meaning of an issue or definition, and will express an erroneous interpretation to the other members of the jury. It also is not unlikely that in the heat of argument, a juror may distort the meaning of an issue as he attempts to convince others of the soundness of his views as to the proper answer thereto. Occurrences of this kind are inherent in our jury system, and are simply pictures of the mental processes of the jury in reaching a verdict.

Under the provisions of Art. 2133 and in view of our system of public education, we can assume that all members of any jury are of sound mind and able to read and write and form their own judgment as to the meaning of the charge. The record in the present case discloses that the entire charge was read to the jury by the trial judge, and again by the foreman when the jurors began their deliberations. Then the foreman went back and read each question separately before a vote was taken on the particular issue. There is no indication that any member of the jury was prevented from reading the charge for himself as Lloyd did, or was under any disability which would have rendered it difficult or impossible for him to do so.

The possibility of a single layman's misunderstanding the charge or failing to recall correctly all the evidence introduced on the trial is one good reason for a jury of six or twelve members. Just as we rely upon the composite judgment of the entire jury to insure that their verdict represents a fair evaluation of the evidence introduced on the trial, we must depend upon that same judgment to arrive at a reasonably accurate interpretation of the court's charge. We cannot hold that the jury has been guilty of misconduct and that the verdict must be set aside when one or more jurors simply misconstrue a portion of the charge and state the erroneous interpretation to the other members of the jury. Most of our jury verdicts would be of little value if we did so hold.

■ Elliott's statement may also have conveyed the idea that an affirmative answer to Special Issue No. 11 might involve the defendant in a criminal prosecution. There is no indication, however, that the jury agreed to return a negative answer to the issue for the purpose of avoiding this eventuality. Plaintiffs cite Black v. Lowe, Texas Civ. App., 123 S.W. 2d 955, (no writ) in which argument by counsel that the jury should not " 'find Tom Lowe guilty of negligence and thereby brand him a criminal,' " was held improper. Argument by counsel as to the legal effect of the jury's answers is quite different from an expression by some member of the jury of his opinion on the subject. The mere discussion by the jury of the legal effect of their answers does not, in the absence of an agreement or showing that they designedly attempted to frame their answers so as to accomplish a particular result, constitute misconduct of the jury. Maryland Casualty Co. v. Hearks, 144 Texas 317, 190 S.W. 2d 62. Although we recognize that in many cases the possibility of criminal prosecution might have more effect upon the jurors than their desire to see a particular party win the controversy under consideration, we have concluded that the same rule should be applied to the two situations.

■ When the jury had answered the damage issue and was ready to take up the defensive issues of contributory negligence, one juror stated that since the plaintiffs had already been given a money judgment, it made no difference how the remaining issues were answered. This statement was promptly contradicted by the foreman, who said, "Yes, sir, it makes a difference; they are here on the end of this; they are all to be answered." There was no further argument about the materiality of the issues, but the evidence on contributory negligence was discussed and the issues relating thereto were answered. There is ample evidence to support the findings of the jury on these issues. One juror testified that after the above statements were made he changed his vote from "no" to "yes" on the contributory negligence issues. We do not think it reasonably appears from the record in this case that injury to the plaintiffs probably resulted from the casual statement which was so promptly and positively contradicted. See Trousdale v. Texas & N. O. R. Co., 154 Texas 231, 276 S.W. 2d 242.

■ Having concluded that the judgment of the trial court should not be reversed upon the ground of jury misconduct, we have examined the brief of plaintiffs as appellants in the Court of Civil Appeals to determine whether there is another ground

upon which the judgment of the appellate court should be affirmed.

■ There was a stop sign controlling plaintiffs' entry into the intersection. Special Issues Nos. 16, 17 and 18, which inquired whether the plaintiffs failed to stop and whether such failure was negligence and a proximate cause of the collision, were answered by the jury in the affirmative. By their points Nos. 3, 4 and 6 in the Court of Civil Appeals, plaintiffs assert that the evidence fails to show that the sign was placed at the intersection by competent legal authority, and hence that the trial court erred in permitting evidence of its existence to go to the jury and in submitting Issues Nos. 16, 17 and 18. The answers of the jury to these issues are immaterial in view of the findings that the collision was also proximately caused by the negligent failure of the plaintiff husband to keep a proper lookout and to have his vehicle under proper control. In the light of the testimony of the plaintiff husband that his wife called his attention to defendant's automobile when the front of plaintiffs' vehicle was almost in the center of the intersection and that he then saw defendant's car for the first time, we certainly cannot say that the answers of the jury to any of the proper lookout issues would probably have been different if evidence regarding the stop sign had not been admitted or if the issues with reference to failure to stop had not been submitted. Since neither the admission of such evidence nor the submission of said issues probably caused the rendition of an improper judgment, it is not necessary for us to decide whether the trial court erred in either of these respects.

■ By their point No. 5, plaintiffs say that the trial court should have given the jury their requested instruction that "the question of right of way is not affected by the presence of the purported stop sign." Even if plaintiffs were entitled to this instruction, which we do not decide, the failure to give same was harmless in view of the finding of the jury that the defendant was negligent in failing to yield the right of way.

After an examination of the relevant portions of the record, we agree with the conclusion of the Court of Civil Appeals that any error of the trial court in permitting defendant to cross-examine the police officers with reference to the figures shown on the stopping distance chart said to have been prepared by the American Automobile Association, was harmless.

The judgment of the Court of Civil Appeals is reversed, and the judgment of the trial court is affirmed.

Opinion delivered January 4, 1956.