Felix A. DAVIS

v.

ALWAC INTERNATIONAL, INC., et al.

No. 6545.

Court of Civil Appeals of Texas.

Beaumont.

May 2, 1963.

Rehearing Denied June 26, 1963.

Nowlin Randolph, Houston, for appellant.

Baker, Botts, Andrews & Sheperd, Houston, for appellees.

McNEILL, Justice.

Monorail, Inc., was organized in Houston in 1955 to develop monorail transportation. Its three moving spirits from mid 1955 through September, 1959, were Murel Goodell, president, Weldon Appelt, a vice president, and appellant Felix A. Davis, a vice president, director and member of the company's executive committee. By 1957 Mon-

orail, Inc., was in financial straits. Knowing that the Swedish international financier, Dr. Axel Wenner-Gren was also very interested in monorail transportation, the three, Goodell, Appelt and Davis, visited him in Mexico City on January 7, 1957. As a result of that visit the Wenner-Gren interests invested $300,000.00 in Monorail, Inc., stock and advanced Monorail, Inc., $400,000.00 over the period of a year or more.

The present suit by appellant Davis was also a result of the meeting with Dr. Wenner-Gren. Davis sued appellees, Alwac International, Inc., Wegematic Corporation, Alweg Corporation and Monorail, Inc., insofar as now material, upon two causes of action. The first was for past due salary of $51,550.00 @ $3,000.00 per month which he claimed appellees owed him based upon a contract of employment made originally in 1956 between him and Monorail, Inc., and also upon an alleged agreement which was made when he, Appelt and Goodell visited Wenner-Gren in Mexico City on January 7, 1957. In addition, appellant alleged that Dr. Wenner-Gren, at that meeting, undertook to and did agree to pay him, Davis, through corporations controlled by Wenner-Gren, the salary which Monorail, Inc., had contracted to pay; that the four companies sued were controlled by Wenner-Gren and were a part of the Wenner-Gren interests. The other count in appellant's suit was one sounding in tort based upon the allegation that the termination on September 27, 1959, of his employment with Monorail, Inc., under the written employment contract made by the board of directors of said company with him was the result of a conspiracy to discharge him made prior to June 1, 1958, between the four companies sued. Appellees answered the suit and pleaded, among other defenses, Subsection 2 of the Statute of Frauds. In addition, Monorail, Inc., filed cross-action against appellant to recover certain inventions or improvements made by appellant upon that company's equipment while he was connected with it.

The case was submitted to the jury upon 51 issues. In response to Issue No. 5, the jury found that Axel Wenner-Gren on January 7, 1957, agreed to pay appellant's salary "through corporations controlled by him". In response to Issue No. 24, the jury found that on said date appellant refused direct employment by the Wenner-Gren interests and in response to Issue No. 25, they found that the "main purpose and object" of the agreement made by Dr. Wenner-Gren, was to guarantee payment to Davis of his salary if Monorail, Inc., did not pay the same. While Dr. Wenner-Gren testified in this cause by deposition, he was never made a party thereto. After verdict, appellees filed their motion for judgment, or alternatively, motion for judgment, n. o. v., or alternatively, motion to disregard certain issues. In accordance with the prayer of this composite motion, the court gave appellant judgment for exactly the amount prayed for by appellant in his motion for judgment but limited his recovery to appellee, Monorail, Inc. Since Monorail's position is different on this appeal from that of the other three appellees, when referring herein to the latter three, they will be called Alwac, Alweg and Wegematic.

 Appellant attacks this judgment upon numerous grounds, none of which we conclude are sound. First, he says that since appellees, including Monorail, Inc., moved the court to render judgment in appellant's behalf against Monorail, Inc., for the amount recovered, this necessarily established three things: (1) the amount of salary due $51,550.00; (2) that appellees adopted the jury's answer to Special Issue No. 5 which found that Wenner-Gren on January 7, 1957, agreed to pay Davis' salary through corporations controlled by him; and (3) in answer to Special Issue No. 7, the jury found appellant's attorneys fees to be $14,000.00. Appellant then reasons from this premise that having recognized Wenner-Gren was to pay Davis' salary through controlled corporations, and asserting Alwac, Alweg and Wegematic were controlled by Wenner-Gren, they cannot escape the

same judgment. In answer to this proposition, it appears that at no place in the judgment rendered by the court does the court or Alwac, Alweg and Wegematic, or Monorail, Inc., for that matter, approve, recognize or adopt Issue No. 5. The judgment recites that appellant's motion for judgment was overruled and then states:

"and the Court having heard and granted the defendant's motions for judgment, or alternatively motion for judgment non obstante veredicto, or alternatively motion to disregard certain special issues, and alternatively objections to plaintiff's motion for judgment, and plaintiff's attorney having been served with the same and having appeared in answer thereto; and the Court being of the opinion that Special Issues Nos. 24 and 25 and the answers thereto are proper and are supported by the evidence and that they constitute a defense in law as to the defendants Alwac International, Inc., Wegematic Corporation, and Alweg Corporation, and the Court being of the further opinion that judgment should be rendered for the plaintiff Felix A. Davis against only the defendant Monorail, Inc., for $73,256.04 on plaintiff's cause of action for salary (said sum of $73,256.04 consisting of $14,000.00 found as attorney's fees and the agreed sum of $51,550.00 as salary, with interest at 6% per annum. * *)"

In view of the alternative sections of appellees' motion, it cannot be said that the sufficiency of Issue No. 5 was recognized or approved. 4 McDonald, Tex.Civ. Practice, Sec. 17.32, p. 1414. And it was stipulated that the balance owing in salary to appellant was $51,550.00. The judgment for the salary, interest and atty's fees went against Monorail, Inc., only. There is no rule that one (Monorail, Inc.) actually acknowledging owing the money may not, either by admission or confession, or on one of several causes of action, allow a party to recover judgment without helping him create a theory against other defendants

who are differently situated. The fact that Monorail, Inc., is willing to acknowledge responsibility for a debt it admits owing does not bind the other appellees to accept the loosely knit terms of Special Issue No. 5.

In this connection, Alwac, Alweg and Wegematic assert that Special Issue No. 5 is too indefinite upon which to establish any liability against them for several reasons. First, there is no finding by the jury as to the identity of the "so-called" controlled corporations. Second, there is no finding that these corporations were the alter ego of the Doctor, nor that the Doctor was the alter ego of these corporations. Third, there was a failure upon the part of appellant to establish that Dr. Wenner-Gren was authorized by any of the appellees to speak for it. We think these points pose serious problems in connection with appellant's proof. However, we think it unnecessary to pass upon the points as it is our opinion that the defense urged by Alwac, Alweg and Wegematic that the promise of Wenner-Gren, if made, was one to answer for the debt, default or miscarriage of another is sound and defeats appellant's recovery as to the three.

█ In connection with this defense under Art. 3995, it will be recalled that the 24th jury finding was that appellant refused direct employment by the Wenner-Gren interests; and the 25th finding was that in agreeing to pay appellant's salary through corporations controlled by him, Wenner-Gren undertook to guarantee payment to Davis of his salary if Monorail, Inc., did not pay the same. Appellant asserts we should not consider the 24th finding because Issue No. 24 is not an ultimate but an evidentiary issue. This perhaps is true, but we need not decide the question. From evidence presently to be pointed to, it is shown that Wenner-Gren attempted, in the conference he had with them on January 7, 1957, to give the three, Davis, Appelt and Goodell, direct employment, but they declined. That they did decline, that they were not directly em-

ployed by Wenner-Gren, was an item for the jury to consider in answering the 25th issue. Appellant next asserts that there is no evidence to support these findings. The evidence clearly supports the 24th: Appellant and Appelt testified Wenner-Gren wanted to hire Davis but Davis refused; on appellant's attorney's fee, appellant's attorney asked the hypothetical question to the expert on such fees, "The European capitalist at his conference first offered to employ the three officers of the Houston Monorail Co. (Goodell, Davis and Appelt) but * * * they declined * * *—." There is also evidence supporting the 25th finding: Wenner-Gren denied he made any promise to pay Davis' salary; Davis said the doctor stated, "You will not have to worry about your salary"; appellant testified the doctor said, "He would personally see that our compensation was arranged for." . Also bearing on this issue, the salary contract was made directly by Davis with the board of Monorail, Inc., for whom he actually worked; this board had set the amount and manner of payment; not once did Davis call upon Wenner-Gren or the three appellees, nor did any of them pay him salary, although Monorail, Inc., was in arrears for a year and a half; not once during the time involved did Davis tell the board of Monorail, or any other person, so far as the record shows, that he had a commitment from Wenner-Gren to pay his salary; for over a year after the agreement was made Davis received his salary from Monorail, Inc., and that was the only compensation he did receive; the fact that during the time Alwac, Alweg and Wegematic were interested in Monorail, Inc., all advances were made by check payable directly to it and none were earmarked for or referred to as payment of salaries.

■ Inasmuch as the 24th and 25th findings have support in the evidence, and the "main purpose and object" of the promisor, Dr. Wenner-Gren, who appellant claims was acting through and for the "controlled" corporations, was to answer for the debt of Monorail, Inc., the promise is proscribed by the Statute of Frauds. Appellant cites Housley v. Strawn Merchandise Co. (Com.App.), 291 S.W. 864, as repudiating the "main purpose and object" test in deciding whether an oral promise falls within or without the statute. However, Gulf Liquid Fertilizer Co. v. Titus (Sup.Ct.) 354 S.W.2d 378, p. 386, clearly sets the question at rest by upholding and applying this test to a set of facts much like the present case.

■ Appellant asserts that because he had performed his contract, had worked for Monorail, Inc., something over 2½ years from the time of the agreement with Wenner-Gren in January, 1957, this takes the case out of the restriction of Art. 3995. This is not the law. Higgenbotham-Bartlett Co. v. Dickey, Tex.Civ.App., 27 S.W.2d 248. Appellant's cases are instances where performance was made by the promisee and payment made by promisor, and the promisor then sought to have his money back. See Binge v. Gulf Coast Orchards Co., Tex.Civ.App., 67 S.W.2d 1045; Bledsoe v. Pritchard, Tex.Civ.App., 107 S.W.2d 742.

■ Appellant asserts alternatively if he is not entitled to recover on the count for past due salary, that he should recover on his cause of action based upon the theory that Monorail, Inc.'s termination of its employment contract with him was the result of a conspiracy between appellees to discharge him prior to June 1, 1958. Under this proposition, he claims he should recover the actual damages found, $51,550.00 (under Issue No. 3 which provided that in considering the damages the jury could take into consideration the past due salary owing him) and exemplary damages in the amount of $12,550.00 found by the jury in answer to Special Issue No. 4. The employment between appellant and Monorail, Inc., was upon a month to month basis and terminable at the will of either party. Appellant refers us to the case of Raymond v. Yarrington, 96 Tex. 443, 73 S.W. 800, 62 L.R.A. 962, 97 Am.St.Rep. 914, as support-

ing this theory of recovery. This case holds that persons who knowingly induce another to breach his contract with a third person gives the latter a cause of action against them for any damages from the breach. But, is the contract of employment terminable at any time at the will of either party breached by a third person's inducement causing or bringing about the termination of such a contract? We think not. Richardson v. Terry, Tex.Civ.App., 212 S.W. 523; Kingsbery v. Phillips Petroleum Co., Tex.Civ.App., 315 S.W.2d 561. This is especially true in the present instance since Alwac, Alweg and Wegematic, as stockholders in Monorail, Inc., were involved economically and believed that the continuation of the employment contract was to their disadvantage. Terry v. Zachry, Tex.Civ. App., 272 S.W.2d 157. See MacDonald v. Trammell, (Sup.Ct.) 356 S.W.2d 143.

■ The judgment of the court provided that Monorail, Inc., on its cross-action against appellant have and recover the entire right, title and interest of appellant in and to the subject matter of certain applications for patents pending in the U. S. Patent Office. Appellant asserts that the court was in error in doing so. Facts show that these patent applications were for certain improvements made upon machinery and equipment by appellant. In answer to Special Issue No. 38, the jury found that appellant's job included technical development work for Monorail, Inc. It is held if an employee "be employed to invent or devise such improvements, his patents therefor belong to his employer, since in making such improvements he is merely doing what he is hired to do." Standard Parts Co. v. Peck, 264 U.S. 52, 44 S.Ct. 239, 68 L.Ed. 560, 32 A.L.R. 1033. This is also the law of Texas. Atlas Brick Co. v. North, (Com.App.) 288 S.W. 146. Appellant's name was listed on the applications pending as a co-inventor. This was done while he was still serving as an officer and director of said company. Having been so connected with the company, he was in a fiduciary relationship with it and should have exercised the utmost good faith in all transactions touching his duties to it and its property. Wiberg v. Gulf Coast Land Development Co., Tex.Civ.App., 360 S.W.2d 563. Among the obligations which this fiduciary duty imposes on the appellant is the one that any inventions which he may develop while occupying such a position and which relate to the occupation of the corporation must be assigned to the corporation for its benefit. Dowse v. Federal Rubber Co., 7 Cir., 254 F. 308; Preis v. Eversharp, Inc., 154 F.Supp. 98.

■ It is asserted that since the prayer in the cross-action was for an order requiring appellant to execute proper assignments of these applications for patents that a judgment effecting the same result is not proper. No prejudice to appellant is shown and the complaint is without merit. Wilson v. Beaty, Tex.Civ.App., 211 S.W. 524, 529. Monorail included in its prayer an item for general relief. This is sufficient to sustain this part of the judgment. 81 C.J.S. Specific Performance § 159, p. 760; 33 Tex.Jur. 468.

■ It is urged that a new trial should be granted because of jury misconduct. Special Issue No. 8 instructed the jury to find from a preponderance of the evidence whether Wenner-Gren, Alwac, Alweg and Wegematic formed a conspiracy on or about January 18, 1957, to bring about the destruction in value of the capital stock of Monorail, Inc. The answer made was "we do not". During the deliberation upon and before the answer made to this issue, Juror Sikes said, in effect, that when one buys stocks he takes the risk of it; that appellant should not be compensated for his stock in Monorail, Inc., since no other stockholder would be. The issue was whether a "conspiracy was formed." Juror Ewell testified that the statement was not made to influence any juror one way or the other, and that nobody changed his vote immediately after such comment. This comment is not shown to have caused any juror to change his vote on the issue. The state-

ment could well have been made by Sikes believing that there was no conspiracy.

■ Special Issue No. 38 inquired whether, from a preponderance of the evidence, the job appellant had with Monorail, Inc., included technical development work, and Special Issue No. 41 inquired whether, from a preponderance of the evidence, an improvement made by appellant was done within the scope of his work as an officer and employee of Monorail, Inc. Both issues were answered, "we do". It is asserted by appellant that since the Juror Sikes stated that when a person is employed by a certain company and develops anything while working for it as a part of his job, the invention belongs to the company, and because of the Juror Spitzenberger's telling of a man who had worked for a company but during his off time hours he made an invention which belonged to and was given to him, that these statements were unsworn testimony which affected the jury's answers to the issues mentioned. Since we have neither been referred to nor found any evidence that involves the making of an invention in off time hours, Spitzenberger's statement is wholly irrelevant and may be disregarded. While Sikes' statement is not a complete, legally accurate one, it was not shown to what extent, if any, it influenced any juror to change his vote. Sikes was not an expert on the law and it would be a hopeless task to require each juror, in jury deliberation and debate, to state a completely accurate proposition of law. Whited v. Powell, 155 Tex. 210, 285 S.W.2d 364, 367. His comment appears to be nothing more than legitimate jury debate.

The other ground of alleged misconduct has to do with Issue No. 25. This issue required that the jury find whether "the main purpose and object of the agreement" made by Wenner-Gren "was to guarantee payment to Davis of his salary if Monorail, Inc., did not pay the same". There was considerable discussion on this issue by the jurors. In the closing argument they had been warned by appellant's attorney to give this issue very careful consideration and study. Appellant argues that the testimony of jurors show there was an agreement made by the jury to disregard the evidence and answer this issue "we do", believing that this answer would give Davis his salary; that this was an unlawful agreement upon the part of the jury and the answer finding that there was a guarantee should not stand. The first two jurors who testified, a Mrs. Hutto and a Mrs. Jones, testified that in their opinion there was no evidence of a guarantee and said about five jurors wanted to answer the issue finding no guarantee which would require the answer "we do not". The testimony of Juror Ginzel stated the jury attempted to answer the issues one after the other but were not able to do so and they got to discussing the general question of whether they favored appellant or appellees; and after thus deciding, in working on the answer to Issue 25 it was said that Roach, the foreman, stated that they would have to answer this issue "we do" in order for Davis to get his money. And appellant concludes that because of the fact that the jurors did finally answer this issue "we do", there was an agreement bringing this about and disregarding the evidence. On the other hand, there was testimony that at least some of the jurors felt there was evidence showing an oral guarantee. The foreman Roach stated that there was disagreement on this question. Juror Ewell also stated: "The statement was made or similar that Wenner-Gren had guarantied his salary or had said that they would pay him or that he would be taken care of. Let's put it that way. That is what the statements were, that he would be taken care of in regard to that." He also stated that they searched through the written evidence attempting to find a written guarantee. They could never find any such guarantee in writing. He stated there were lots of pros and cons in regard to the guarantee of the salary among the different jurors and the Juror Walker stated that the only guarantee they could find was an implied one. This juror stated that the jury was finally all in agreement to answer the issue in the way that it was

**804**

done. When the verdict was brought in the jury was polled and each juror stated that the answer made to Special Issue No. 25 was his own individual answer and in the testimony by the jurors practically all of them stated that they answered this issue upon the evidence before them.

In addition to Ginzel's statement inferring an agreement, the Juror Bailey indicated that there was an agreement made by the jurors to disregard the evidence and answer Issue 25 so as to give appellant his salary. Contrary to this, the Juror Ewell said that none of the jurors said that they should disregard the evidence and render verdict different from the way they thought the evidence supported, and that the jury answered all issues to the best of their ability from the evidence; and the Juror Bailey, who had said there was such agreement, testified that when the verdict was brought in he was asked whether the answer to Special Issue 25 was his individual answer. He said it was and stated that he was telling the truth when he did so. The Juror Spitzenberger said they never entered into an agreement to disregard any issue and decide the case in their own way. He further stated that they answered each issue to the best of their ability with the evidence before them.

 There was, therefore, some testimony that the jury reached an agreement to disregard the evidence and answer this Issue No. 25 in a way that would bring about, in their view, a judgment for appellant. If this was established, the verdict would be vitiated. Whited v. Powell, 155 Tex. 210, 285 S.W.2d 364. There is, however, directly contradictory testimony from Jurors Spitzenberger and Ewell. In addition, practically each juror of the ten examined testified that the answer made to Issue 25 was based under the instruction of the court to answer the issue from a preponderance of the evidence. Since the trial court overruled the motion for new trial, he must have found that there was no such agreement and, consequently, no injury

done. Younger Bros., Inc. v. Myers, 159 Tex. 585, 324 S.W.2d 546; W. W. Auto Parts, Inc. v. Hyak, Tex.Civ.App., 346 S. W.2d 919.

The judgment below is affirmed.