Carroll LOCKETT et al., Appellants,

v.

REDI–FUEL TRANSPORT, INC., et al., Appellees.

No. 5027.

Court of Civil Appeals of Texas, Eastland.

Oct. 20, 1977.

Rehearing Denied Nov. 17, 1977 and Dec. 15, 1977.

Aubrey J. Fouts, Key, Carr, Evans & Fouts, Lubbock, for appellants.

Robert D. Batjer, Jr., Wagstaff, Harrell, Pope, Alvis, Dickenson & Erwin, Abilene, Tom Hamilton, LaFont, Tunnell, Formby, LaFont & Hamilton, Plainview, for appellees.

RALEIGH BROWN, Justice.

This wrongful death case is the result of an automobile-truck collision. Bert Lockett, the surviving husband, and Carroll Lockett, the sole child of Zola H. Lockett, sued Redi-Fuel Transports, Inc. and its driver, Guy W. Steiwig, for damages for the death of Zola Lockett. A take nothing judgment was rendered following a jury verdict. Plaintiffs appeal. We affirm.

The jury determined: Guy W. Steiwig (1) did not fail to keep a proper lookout; (2) was not traveling at a greater rate of speed than a person using ordinary care; (3) did not fail to make proper application of his brakes; (4) did not fail to turn to his left as a person using ordinary care; (5) was driving while under the influence of liquor; (6) such driving under the influence of liquor was a proximate cause of the occurrence in question; and (7) his driving under the influence of liquor was a heedless and reckless disregard of the rights of others. The jury also found: Mrs. Lockett (1) failed to keep a proper lookout; (2) such failure was a proximate cause of the occurrence; (3) failed to yield the right-of-way; and (4) such failure was a proximate cause of the occurrence. Steiwig's percentage of negligence causing the occurrence was 25% and Mrs. Lockett's percentage was 75% according to the jury.

Appellants contend the court erred in failing to set aside the lookout, comparative negligence and the right-of-way findings as to the deceased driver because there is no evidence and factually insufficient evidence to support such findings.

Zola Lockett was killed on July 18, 1975 in an automobile-truck collision occurring a few feet outside the city limits of Snyder, Texas near the intersection of United States Highway 84 and Huffman Avenue. A truck stop was located north and west of the intersection. The Lockett vehicle being driven by Zola Lockett apparently exited the truck stop on the north and drove onto the east-west road just north of Huffman Avenue. The Lockett vehicle stopped at the stop sign. The Lockett vehicle then pulled from the stop sign, turning south onto U.S. 84 and began to "angle" southeast towards the intersection of Huffman Avenue and U.S. 84. Apparently, the Locketts intended to make a U-turn and head north toward Lubbock, their intended destination. The speed of the Lockett vehicle was described only as "gradual".

As the Lockett vehicle neared the U-turn point, it angled into the left-hand lane and approached the left-turn lane. The transport truck, driven by the defendant truck driver, being in the left lane hit the automobile. The front of the transport truck struck the Lockett vehicle at approximately the driver's door. The point of impact was six feet into the left-hand lane and twenty-eight feet from the south end of the left-turn median. There were no skid marks or indications of swerving by either vehicle before impact.

Steiwig first saw the Lockett vehicle just as it pulled away from the stop sign and edged into the right-hand lane of U.S. 84. He described the Lockett vehicle as "angling" across at a gradual speed. Immediately before impact, Steiwig testified he applied his brakes and blew his horn. After impact, the truck continued in a south, southeasterly direction, hit the left-turn median for north-bound traffic to turn west, and stopped 225 feet from the point of impact in the northbound lane of U.S. 84. The truck jackknifed to a stop. The Lockett vehicle was knocked to the south, southwest and came to rest some 696 feet from the point of impact.

In *Martinez v. Delta Brands, Inc.,* 515 S.W.2d 263 (Tex.1974), the court said:

"When a party asserts that there is no evidence to support jury findings, we must review the evidence in its most favorable light, considering only the evidence and inferences which support the findings, and rejecting the evidence and inferences contrary to the findings. *Butler v. Hanson,* 455 S.W.2d 942 (Tex.1970); *Langlotz v. Citizens Fidelity Insurance*

*Company,* 505 S.W.2d 249 (Tex.1974). It would be our duty to affirm the judgment of the Court of Civil Appeals if the evidence offered to show negligence were proven to be no more than a scintilla of proof. Thus if the evidence created nothing more than a mere surmise or suspicion of the existence of negligence, such evidence would be, in legal effect, no evidence. *Joske v. Irvine,* 91 Tex. 574, 44 S.W. 1059 (1898). But if negligence may be reasonably inferred from direct evidence, then there is no more than a scintilla of evidence. Calvert, 'No Evidence' and 'Insufficient Evidence' Points of Error, 38 Texas Law Review 361, 363 (1960)."

In *Lynch v. Ricketts,* 158 Tex. 487, 314 S.W.2d 273 (1958), it is said:

"In a case of this character, standards of ordinary care such as the direction and extent of the observation which Mrs. Ricketts should have made at any particular time cannot be fixed with any degree of certainty but must be left in large measure to the trier of fact. It is well settled, moreover, that negligence and causation, like any other ultimate fact, may be established by circumstantial as well as direct evidence. See *English v. Miller,* Tex.Civ.App., 43 S.W.2d 642 (wr. ref.); *Henry v. Publix Theatres Corp.,* Tex.Civ.App., 25 S.W.2d 695 (wr. ref.). The jury is thus not only the judge of the facts and circumstances proven but may also draw reasonable inferences and deductions from the evidence adduced before it. Its findings may not be disregarded under the provisions of Rule 301, therefore, if the record discloses any evidence of probative value which, with inferences that may be properly drawn therefrom, will reasonably support the same."

■ We find some evidence of probative force in the record which supports the jury's answers to the lookout, right-of-way and comparative negligence findings on the deceased driver. The testimony of Steiwig together with the testimony of Holloway, an eyewitness who testified the automobile pulled out on the highway in front of the truck, constitutes some evidence on these issues. Also, we are of the opinion the circumstantial evidence would support the findings.

We have considered the entire record and hold the evidence is not factually insufficient to support the findings. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

Appellants contend the court erred in failing to grant them a new trial on the speed finding, the lookout finding and the comparative negligence finding as to the truck driver because the findings are supported by factually insufficient evidence and are against the weight of the evidence.

■ We have considered the entire record and hold such findings are not factually insufficient and are not against the weight of the evidence. *In re King's Estate,* supra.

■ Appellants also contend the court erred in admitting the officer's testimony that the truck driver's intoxication was not the cause of the accident. Although we agree the admission of such testimony was error and the testimony is calculated to show that the officer did not believe intoxication caused the accident, we conclude from an examination of the entire record that such error was harmless.

The objectionable testimony of Trooper Clark given on cross-examination was:

"Q . . . What are the elements as you understand them of the offense of involuntary manslaughter?

A All right, sir. That person was operating the motor vehicle or vehicle— I'm dealing with motor vehicles— and that person was using the public highway and was driving that—the person—was doing the driving was under the influence of alcohol that caused the death of someone else.

Q So a necessary element and the last element of that offense would be

that the intoxicated state of a driver actually caused the death of another person?

A Yes, sir.

Q And if that element were not there, you couldn't make the offense, could you?

A (NO RESPONSE)

Q Couldn't make it stand up?

A Sir, I don't think so.

Q All right."

The vice of such testimony is the opinion of the officer that the intoxication was not the cause of the accident.

Significantly, plaintiff's attorney on redirect examination of Trooper Clark inquired:

"Q In your determination as to what charges to file, you were dealing with a criminal standard of proof, weren't you, Mr. Clark?

A Yes, sir.

Q Do you understand that the criminal standard of proof is proof beyond a reasonable doubt?

A Yes, sir.

Q That is a different standard of proof from the civil standard of proof, isn't it?

A Yes, sir.

Q You weren't doing any investigation for a civil case, were you?

A No, sir.

. . . . .

Q So actually you didn't try to make any determination as to what was the causation, what happened to cause the accident from a civil standpoint, did you, Mr. Clark?

A No, sir."

Appellants contend the admission of Clark's testimony affected the jury's determination of the causation of the accident.

Contrary to Clark's objectionable testimony, the jury determined Steiwig, the truck driver, was driving his vehicle while under the influence of intoxicating liquor and such intoxication was a proximate cause of the occurrence. The erroneously admitted opinion testimony of Trooper Clark was harmless because the jury expressly found in favor of appellants on the tendered issues to which the testimony was applicable. Rule 434, T.R.C.P.; *Whited v. Powell,* 155 Tex. 210, 285 S.W.2d 364 (1956); *Womacks v. Horne,* 300 S.W.2d 765 (Tex.Civ.App.— Waco 1957, no writ); *Rowan & Hope v. Valadez,* 258 S.W.2d 395 (Tex.Civ.App.— San Antonio 1953, writ ref. n. r. e.); *Alexander v. Appell Drilling Co.,* 290 S.W.2d 377 (Tex.Civ.App.—Waco 1956, writ ref. n. r. e.).

Examination of the entire record supports the jury's findings on the comparative negligence issue which asked the jury to find the percentage of "negligence that caused the occurrence." Holloway, an eyewitness, testified that defendant was holding the truck as straight as any man could and trying to miss the automobile. He further testified that the deceased driver was pulling out on the highway in front of the truck. Steiwig testified he pulled over to the left as far as possible, sounded his airhorn, applied his brakes and could have avoided the accident if plaintiff had not entered the left lane.

The jury resolved in favor of Steiwig the lookout, speed, brakes and turn-left issues. Such findings absolve Steiwig from negligent operation of the truck. The jury found Mrs. Lockett failed to keep a proper lookout and failed to yield the right-of-way, such failures being proximate causes of the occurrence. Additionally, the jury determined Steiwig drove his vehicle in a heedless and reckless disregard of the rights of others. Having made such findings and even though Clark's opinion suggested that the intoxication was not a cause of the occurrence, the jury found Steiwig's percentage of negligence causing the occurrence was 25% and Mrs. Lockett's percentage was 75%.

We hold under the circumstances of the entire record the error is not such as caused

the jury to return a verdict which it would not have returned had it not occurred. We do not agree "that the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case." Rule 434, T.R.C.P.

The judgment is affirmed.

WALTER, Justice, dissenting:

I dissent.

Appellants contend the court erred in admitting the officer's testimony that the truck driver's intoxication was not the cause of the accident.

Officer Bob L. Clark, a trooper with the Texas Department of Public Safety, testified on direct examination from plaintiffs' lawyer, Fouts, substantially as follows:

I have been stationed in Snyder a little over nine years with the department and at the present time I am a traffic supervisor apprehending criminals and making traffic accident investigations. I investigated the accident that occurred near the area known as Huffman Avenue and U.S. Highway 84 on July 18, 1975, involving a truck-trailer and an automobile. I passed by the truck and the man standing in front of the truck told me he was all right so I went on to the car. After I had taken care of the situation at the Lockett car, I went over to the truck and questioned the truck driver. As the truck driver and I were going to the scene of the accident, I noticed he staggered slightly. When he got to the point of impact, I smelled odor of alcoholic beverage on his breath. I asked him to remove his dark shades so I could see his eyes and they were bloodshot.

He was asked the following questions and he gave the following answers:

"Q And then what occurred next—

A All right, sir.

Q —in connection with that?

A Then I advised him, you know, that I believe he had had a little too much to drink, that he was under arrest for driving while intoxicated."

No objections were made to this testimony.

On cross-examination, he was asked:

"Q Officer, I will now ask you what your normal procedure would be where you were dealing with a situation wherein a driver of a vehicle had been arrested by you, had taken the breathalyzer test and registered .12% on it, and smelled of alcohol and staggered slightly once, where that driver was involved in a motor vehicle accident which caused the death of someone else, what would you normally do as the—"

Plaintiffs objected to this question because it called "for a conclusion and speculation about what he would do or what he would normally do and things of that kind. It would have nothing to do with this case."

After considerable discussion and examination of the witness out of the presence of the jury, the court said:

"THE COURT: —the reason we got into this mess is because the criminal charge in the first place was elicited. The evidence was elicited about the criminal charge being filed. So if there is error, I think it has already happened. Therefore, I am going to—I will overrule the objection. I am going to allow the defense to go into the other matter."

Thereafter, cross-examination continued and he testified as follows:

I filed a charge of driving while intoxicated against Mr. Steiwig based on my observation of him and his breathalyzer test.

He was asked the following question:

"Q My question when counsel objected had to do with what you normally would have done where a person who was operating a motor vehicle

in what you thought was an intoxicated state and where because of that intoxicated state, in your opinion, that person caused the death of another person by running over them or something, I would ask you what the normal charge would be?"

Plaintiffs again objected to the question which was overruled.

Trooper Clark continued to testify substantially as follows:

The charge normally would have been involuntary manslaughter. One of the necessary elements of that offense would be that the intoxicated condition of the driver caused the death of another person. If this necessary element of the offense was not there, I don't think it would stand up.

Appellants contend the statement by the officer about the charge of driving while intoxicated was a voluntary statement, not in response to any question and no objection was made to the answer.

In *Dallas Railway & Terminal Co. v. Bailey,* 151 Tex. 359, 250 S.W.2d 379 (1952), the court said:

" . . . The fact that inadmissible testimony of one party is admitted without objection does not authorize the other party, by way of rebuttal, to put in inadmissible testimony over timely and proper objection . . . "

In *Snow v. Bond,* 438 S.W.2d 549 (Tex. 1969), it is said:

" . . . An expert witness can and should give information about these standards without summarizing, qualifying or embellishing his evidence with expressions of opinion as to the conduct that might be expected of a hypothetical doctor similarly situated. The latter is not an appropriate subject for expert testimony . . . "

In *Lindley v. Lindley,* 384 S.W.2d 676 (Tex.1964), the court said:

" . . . No witness, whether expert or non-expert, is permitted, over proper objection, to state his opinion as to the legal capacity of a person to make a will, because the determination of the existence of testamentary capacity involves the application of a legal definition to the facts. See *Brown v. Mitchell,* 88 Tex. 350, 31 S.W. 621, 36 L.R.A. 64; McCormick & Ray, Texas Law of Evidence, 2nd ed. 1956, § 1421. For the same reason even an expert medical witness is not qualified to say, in so many words, that a particular belief held by the testator constituted an insane delusion."

In *Chuppe v. Gulf Iron Works,* 306 S.W.2d 177 (Tex.Civ.App.—Eastland 1957, writ ref. n. r. e.), this court said:

"The court erred in permitting the witness to so testify. In 2 McCormick and Ray, Texas Law of Evidence, 281, it is stated that the Texas courts have usually excluded opinion as to carelessness and prudence since they are mixed questions of law and fact and such testimony constitutes an invasion of the province of the jury.

'—a witness may not ordinarily express his opinion as to the cause of a particular accident or occurrence.' 19 Tex.Jur. 18.

'The opinion of an expert on the question of due care or negligence is doubly objectionable as involving a preliminary question of law and as an invasion of the province of the jury to determine ultimate issues, and is therefore inadmissible.' 19 Tex.Jur. 34, 35.

'Thus title or want of title, mental capacity or lack of it, fraud or good faith, due care or negligence, are all conclusions which the law draws from certain facts; and when the jury seek to determine—whether a party used due care, the ultimate question for determination is a mixed question of law and fact.' 19 Tex.Jur. 104, 105.

In *Texas & P. R. Co. v. Felker,* 40 Tex. Civ.App. 604, 90 S.W. 530, 531, the court said:

'We believe no case can be cited where it is held that a witness may

testify that an act does or does not constitute negligence.'"

I hold it was error for the court to admit the testimony of Officer Clark regarding the involuntary manslaughter offense.

Appellees contend even if the admission of the questionable testimony was error, it was harmless.

Appellants contend the error in admitting the testimony of the officer concerning the reasons he did not file involuntary manslaughter charges against the truck driver constitutes reversible error in that it was reasonably calculated to cause and probably did cause rendition of an improper verdict. They contend the officer's testimony amounted to his speculative opinion as to causation based on the burden of proof in a criminal case. They contend his subjective opinion applying a legal conclusion to a mixed question of law and fact destroyed their case before the jury. They contend this improper testimony was calculated to and did cause an improper verdict not only on the comparative negligence findings, but on the speed and lookout issues as to the truck driver.

In my opinion, such error was reasonably calculated to and probably did cause the rendition of an improper judgment. Rule 434, T.R.C.P.

## ON MOTION FOR REHEARING

RALEIGH BROWN, Justice.

■ On motion for rehearing, appellants contend the record conclusively proves that Holloway could not have been an eyewitness to the accident although his testimony in part was as follows:

"Q What did you see?

A We seen the truck out there in the boulevard and he was going down the highway and heard the braking of his tires. But looked on further down the road to see what he was braking for and there was a car pulling out on the highway in front of him down at the next intersection.

Q What do you mean by the boulevard? What are you referring to?

A Highway 84.

Q So the car was pulling out in front of the truck?

A Yes, sir.

.　　.　　.　　.　　.

Q Did he brake it all the way to point of impact?

A Well, he was braking all the way to the point of impact from the sound of the tires.

Q Was he braking after the point of impact?

A To the best of my ability he was from the sound of things.

Q Did he hold the rig straight?

A Yes, sir. It was straight as any man could hold it.

.　　.　　.　　.　　.

Q Now, has Mr. Fouts talked to you about this case, sir?

A Who?

Q This man sitting right here?

A Yes, sir.

Q About how long ago was that?

A It's been three weeks, maybe a month, something like that.

Q Did you tell him basically the same thing that you told us here today?

A Yes sir, I gave him a statement.

Q You told him that you were an eye witness to it?

A Yes, sir.

A And—

A I think this is the man. I believe I recognize him.

Q All right.

A I don't know him by name.

Q But you were an eye witness to the accident?

A Yes, sir. He didn't have that tie and suit on."

Appellants urge because other testimony of Holloway demonstrated he believed the

Lockett vehicle to be traveling east on Huffman Avenue which was contrary to the truck driver's and investigating officer's version of the accident and the physical facts Holloway, as a matter of law, could not have been a preimpact witness.

This court in *Carruth v. First National Bank of Fort Worth,* 544 S.W.2d 678 (Tex. Civ.App.—Eastland 1976, writ ref. n. r. e.) said:

"Before the testimonial declaration of a party will be given conclusive effect, it must appear among other things that the statement is deliberate, clear, and unequivocal. *Dallas Railway & Terminal Company v. Gossett,* 156 Tex. 252, 294 S.W.2d 377 (1956). If the statement merely contradicts some other portion of the party's testimony, conclusive effect cannot be given thereto, but a fact issue is presented for the determination of the jury as in the case of an ordinary witness. *United States Fidelity & Guaranty Co. v. Carr,* 242 S.W.2d 224 (Tex.Civ.App.—San Antonio 1951, writ ref.)."

We find nothing to cause us to change the judgment heretofore entered. The motion for rehearing is overruled.